EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ana Teresa López y otros<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Demandados-Recurridos<br><br>v.<br><br>Jessica Lugo Porrata Doria y Otros<br><br>v.<br><br>Ricardo J. Calderón López y Otros<br><br>Demandados-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Terceros Demandados-Recurridos | Certiorari<br><br>2006 TSPR 149<br><br>169 DPR _____ |

Número del Caso: CC-2000-694

Fecha: 4 de octubre de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:

        Hon. José M. Aponte Jiménez

Abogados de la Parte Peticionaria:

        Lcdo. Juan E. Alvarez Cobián
        Lcda. Evelyn Benvenutti Toro

Abogado de la Parte Recurrida:

        Lcdo. Edwin R. Bonilla Vélez

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ana Teresa López y otros<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Demandados-Recurridos<br><br>v.<br><br>Jessica Lugo Porrata Doria y otros<br><br>v.<br><br>Ricardo J. Calderón López y otros<br><br>Demandados-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Terceros Demandados-Recurridos | CC-2000-694 | CERTIORARI |

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 4 de octubre de 2006.

Nos corresponde determinar si un establecimiento comercial puede ser objeto de una reclamación en daños y perjuicios bajo el artículo 1802 del Código Civil por suministrar bebidas alcohólicas a una persona que está visiblemente intoxicada y que posteriormente, causa daños al conducir un automóvil bajo la influencia del alcohol.

Resolvemos en la afirmativa y concluimos que ambos foros inferiores se equivocaron al resolver, como cuestión de derecho, que la reclamación de responsabilidad civil extracontractual presentada contra *El Patio de Sam* no tiene cabida en nuestro ordenamiento y al dictar sentencia sumaria desestimando la causa de acción por ese fundamento. Sin embargo, por la naturaleza de la norma adoptada en este caso, ejercemos nuestra discreción judicial para que tenga efectos prospectivos. Por esa razón, confirmamos la sentencia recurrida. A continuación relatamos los hechos según surgen de las determinaciones de hechos del Tribunal de Primera Instancia y las declaraciones juradas e informes de la Policía de Puerto Rico contenidas en el expediente.[1]

### I.

En la madrugada del 21 de agosto de 1993 varios jóvenes estuvieron envueltos en un accidente automovilístico ocurrido en el expreso Luis Muñoz Rivera, en el sector Miramar. A raíz de este accidente fatal, Rafael Lugo Porrata Doria perdió la vida y Ricardo Calderón López

---

[1] Cabe señalar que anteriormente hemos resuelto otras controversias en este pleito. En <u>López v. Porrata Doria</u>, 140 D.P.R. 96 (1996), la parte demandada cuestionó la validez de los emplazamientos. Por otro lado, en <u>López v. Porrata Doria</u>, res. el 4 de abril de 2002, 156 D.P.R.__ (2002), 2002 T.S.P.R. 39, examinamos el ámbito de responsabilidad de los padres por los actos de sus hijos cuando aquellos se encuentran separados por sentencia de divorcio y, aunque ambos comparten la patria potestad, sólo uno de ellos tiene la custodia. Resolvimos que, "en tales casos, en ausencia de prueba que demuestre que se actuó como un buen padre de familia, responde de ordinario el padre custodio a no ser que el hecho dañoso se cometa cuando el menor esté bajo la compañía del otro padre, en virtud del derecho de visita". *Id.*

resultó seriamente lesionado.  Ambos jóvenes tenían veinte (20) años de edad cuando ocurrió el accidente.

Según la declaración jurada de Jesús Martín Rosado, el viernes 20 de agosto de 1993 Víctor Pimentel, Gianni Tomasini Durán y él llegaron al restaurante-barra *El Patio de Sam*, localizado en el Viejo San Juan a alrededor de las 10:45 de la noche. Allí se encontraron con José Carlos Santiago Vázquez, Gary Rocaford, Miguel Príncipe Rodríguez y Néstor Curet Miranda. Luego arribaron Ricardo Calderón López y Rafael Lugo Porrata Doria, quienes venían de una fiesta.  Según la declaración jurada, Jesús Martín Rosado, Ricardo Calderón López y Rafael Lugo Porrata Doria ingirieron bebidas alcohólicas en *El Patio de Sam*.

Todos los jóvenes se marcharon del establecimiento comercial aproximadamente a las 2:30 de la madrugada del sábado 21 de agosto de 1993 y se dirigieron a buscar sus automóviles. Posteriormente se encontraron en el semáforo frente al Capitolio en dirección de San Juan hacia Hato Rey. Rafael Lugo Porrata Doria conducía un Chevrolet Beretta y Ricardo Calderón López iba de pasajero. José Carlos Santiago Vázquez, acompañado por Gary Rocaford, manejaba un Ford Mustang. Néstor Curet Miranda y Miguel Príncipe Rodríguez iban en un Honda CRX. Gianni Tomasini Durán conducía un automóvil marca Eagle, modelo Talón en el que iban como pasajeros Víctor Pimentel y Jesús Martín Rosado.

Según el informe preparado por la Policía de Puerto Rico, los cuatro vehículos transitaban por el Expreso Muñoz Rivera en dirección de San Juan hacia Hato Rey a una velocidad mayor que la permitida por ley, haciendo carreras ("regateo"). Al llegar frente a la calle Central en el sector Miramar, uno de los vehículos impactó al automóvil Chevrolet Beretta que discurría por el carril izquierdo. El conductor del Chevrolet Beretta perdió el control del vehículo, pasó sobre la isleta del lado derecho y chocó con un objeto fijo de concreto utilizado para expresión pública. El conductor, Rafael Lugo Porrata Doria, falleció en el lugar del accidente. **El informe de toxicología reflejó un 0.20% de alcohol/peso en la sangre**. El pasajero, Ricardo Calderón López, sufrió serias lesiones.

Como consecuencia del accidente se han presentado diversas reclamaciones en daños y perjuicios que han sido consolidadas en el Tribunal de Primera Instancia, Sala Superior de San Juan. Entre éstas, se le imputa responsabilidad a *El Patio de Sam* por alegadamente haber incurrido en conducta culposa o negligente al venderle bebidas alcohólicas al joven Rafael Lugo Porrata Doria a sabiendas, o debiendo saber, que éste conduciría un vehículo de motor al salir del establecimiento público, siendo esto la causa del fatal accidente.

*El Patio de Sam* solicitó la desestimación de esta reclamación mediante sentencia sumaria, negando haber incurrido en negligencia y alegando que la causa próxima

del accidente fue la negligencia de los jóvenes envueltos en el accidente al asumir un riesgo previsible con sus actuaciones.

El foro de instancia dictó sentencia sumaria parcial el 27 de diciembre de 1999 desestimando la reclamación contra *El Patio de Sam* basándose en que este Tribunal no ha reconocido que los negocios dedicados a la venta de bebidas alcohólicas tengan un deber jurídico hacia sus clientes de actuar con especial cuidado. Dicho foro resolvió que "[a]ún asumiendo ciertos los hechos alegados contra el codemandado el Patio de Sam, la causa de acción torticera en la cual se fundamenta es inexistente en nuestro sistema de derecho, por lo que no se justifica la concesión de remedio". El Tribunal de Apelaciones confirmó la sentencia mediante resolución dictada el 30 de junio de 2000 en la que determinó que "en el caso ante nuestra consideración al no estar en controversia que no existe en nuestro sistema de derecho una reclamación como la aquí solicitada, procedía como cuestión de derecho la sentencia sumaria solicitada".

Ana Teresa López, Ricardo Calderón López[2] y Jorge Calderón López (los peticionarios) recurren de esta decisión del foro apelativo. Plantean que el entonces Tribunal de Circuito de Apelaciones se equivocó al

---

[2] El 27 de junio de 2002, Ricardo Calderón López compareció mediante "Moción Informativa y en Solicitud de Relevo de Representación Legal" informándonos que desiste de su acción civil en contra de los demandados.

confirmar la sentencia sumaria del Tribunal de Primera Instancia y al resolver que *El Patio de Sam* no es responsable de los daños alegados en la demanda, como cuestión de derecho. El tribunal apelativo decidió que en nuestro ordenamiento jurídico no existe una causa de acción como la alegada en este caso contra los negocios dedicados al expendio de bebidas embriagantes, porque no hay estatutos específicos que impongan tal responsabilidad ni jurisprudencia que reconozca que dichos negocios tienen un deber jurídico de especial previsión hacia sus clientes.

Expedimos el auto de *certiorari* el 30 de octubre de 2000 y procedemos a resolver con la comparecencia de todas las partes.

II.

Contrario a otras jurisdicciones **—y aparte de las disposiciones del artículo 1802 del Código Civil, las cuales deben ser interpretadas de forma amplia—** no tenemos en Puerto Rico legislación especial que regule específicamente la controversia que este caso nos plantea. Sin embargo, contamos con expresiones categóricas de política pública en cuanto al consumo de bebidas alcohólicas y la seguridad en el tránsito al conducir vehículos de motor.

La Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000, establece como posición

oficial y política pública del gobierno del Estado Libre

Asociado de Puerto Rico:

> **[Q]ue el manejo de vehículos o vehículos de motor
> en las vías públicas bajo los efectos de bebidas
> embriagantes, drogas o sustancias controladas,
> constituye una amenaza de primer orden a la
> seguridad pública** y que los recursos del Estado
> irán dirigidos a combatir; en la forma más
> completa, decisiva y enérgica posible, con miras
> a la pronta y total erradicación, de esta
> conducta antisocial y criminal que amenaza las
> vidas y propiedades de todos los ciudadanos, así
> como la tranquilidad y la paz social.
>
> A tenor con lo dispuesto, será ilegal que
> cualquier persona bajo los efectos de bebidas
> embriagantes, drogas o sustancias controladas
> conduzca, haga funcionar cualquier vehículo o
> vehículo de motor, o posea cualquier envase
> abierto que contenga bebidas embriagantes en el
> área de pasajeros de cualquier vehículo o
> vehículo de motor.  9 L.P.R.A. § 5201 (2001 &
> Supl. 2005) (énfasis nuestro).[3]

La Exposición de Motivos de la Ley Núm. 132 de 3 de

junio de 2004 que recientemente enmendó la Ley de Vehículos

y Tránsito señala:

> En la actualidad, Puerto Rico se integra al
> movimiento mundial de cooperación internacional e
> intercambio de ideas innovadoras para combatir el
> crimen y mejorar la calidad de vida de todos
> nuestros ciudadanos. […] El transitar con
> seguridad por las carreteras de un país es
> requisito básico del progreso económico, pero más
> aun, es indispensable para mantener la
> estabilidad social y emocional de la familia, así
> como de la clase trabajadora, dentro de la rápida
> y convulsa vida moderna.  Siendo nuestro Puerto
> Rico, un país de indudable trayectoria
> progresista, se inclina a la misma protección del
> ciudadano que los países de avanzada.     El
> tránsito por las vías públicas tiene que operar
> con orden y en forma reglamentada; la "Ley de
> Vehículos y Tránsito de Puerto Rico" es el medio
> que la Legislatura del Estado Libre Asociado de

---

[3] Esta legislación redujo el por ciento de alcohol en la sangre permitido para manejar un vehículo de motor del .10% al .08%.  9 LPRA § 5202 (2006).

Puerto Rico ha suministrado para lograr el control del conductor ebrio o bajo los efectos de drogas o sustancias controladas –además de otras situaciones de riesgo, la cual es una amenaza constante y muy seria que atenta contra la seguridad de todos en las carreteras.

La infracción de la Ley de Vehículos y Tránsito acarrea serias penalidades. Los infractores pueden incurrir en delito menos grave o grave, dependiendo de las circunstancias, puntualizando de esta forma el compromiso del legislador con la supresión de este mal social. 9 L.P.R.A. §§ 5201-5209, 5301.

De igual forma, la Ley Núm. 470 de 23 de septiembre de 2004, 9 L.P.R.A. § 2097, tiene el propósito de contribuir a la prevención de accidentes de tránsito por conductores ebrios y le impone como obligación a los negocios con licencia "para el expendio y venta de bebidas alcohólicas a consumirse en sus predios, colocar un rótulo en un área visible alertando a los consumidores que consumen bebidas alcohólicas que se le proveerá ayuda para obtener alternativas de transportación segura". Exposición de Motivos, Ley Núm. 470 de 23 de septiembre de 2004. Esta ley también impone la obligación de "asistir a los consumidores para obtener alternativas de transportación segura si lo solicita. La asistencia proveerá el mínimo de tres (3) llamadas telefónicas a personas o proveedoras de transportación sin costo para el consumidor". 9 L.P.R.A. § 2097(c).

III.

No obstante las contundentes expresiones de política pública de las leyes citadas, ninguna atiende el caso específico que nos ocupa. Debemos, pues, recurrir a nuestro derecho general de responsabilidad civil extracontractual para, acorde con nuestra tradición civilista, construir el análisis a partir de la normativa que se deriva del artículo 1802 del Código Civil. Dicho artículo dispone:

> El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. Art. 1802 Cód. Civ. P.R., 31 L.P.R.A. § 5141.

Como sabemos, las obligaciones "nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". Art. 1042 Cód. Civ. P.R., 31 L.P.R.A. § 2992. Conforme a esto, debemos recurrir a las disposiciones sobre la naturaleza y efectos de las obligaciones para otorgarle contenido a la amplia disposición del artículo 1802. El artículo 1057 señala:

> La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.

> Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia. Art. 1057 Cód. Civ. P.R., 31 L.P.R.A. § 3021.

Añade el artículo 1058:

> Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que, previstos, fueran inevitables. Art. 1058 Cód. Civ. P.R., 31 L.P.R.A. § 3022.

Hemos reiterado en numerosas oportunidades que todo perjuicio, material o moral, "da lugar a reparación si concurren tres requisitos o elementos: (1) tiene que haber un daño real; (2) debe existir nexo causal entre el daño y la acción u omisión de otra persona, y (3) el acto u omisión tiene que ser culposo o negligente." Bonilla v. Chardón, 118 D.P.R. 599, 610 (1987).

Respecto al concepto de la culpa hemos señalado que "es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño". Colón v. Romero Barceló, 112 D.P.R. 573, 579 (1982). Es decir, incluye todo tipo de transgresión humana tanto en el orden legal como en el orden moral. Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 313 (1970). Por lo tanto, "el actuar que da lugar a la responsabilidad civil ha de ser ilícito, contrario a la ley, orden público o buenas costumbres". XXXI Scaevola, Código Civil 339 (1974).

Se actúa de manera culposa, según explicamos en Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853, 860 (1976), cuando no se obra como una persona de diligencia normal u ordinaria, un buen padre de familia, conforme a

las circunstancias del caso. Lo determinante es cómo se hubiese desenvuelto en una situación parecida una persona "de prudencia común u ordinaria". *Id*. La culpa "es la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". Toro Aponte v. E.L.A., 142 D.P.R. 464, 473 (1997). Es también "la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso" *Id*. [citando a C. ROGEL VIDE, LA RESPONSABILIDAD CIVIL EXTRACONTRACTUAL 90 (1976)].

Otro requisito esencial de la causa de acción bajo el artículo 1802 es el daño. Éste se ha definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". JOSÉ PUIG BRUTAU, FUNDAMENTOS DE DERECHO CIVIL 92 (1983). Sin daño o perjuicio no existe obligación de indemnizar. *Id*. en la pág. 91. La responsabilidad civil "trata de reparar un perjuicio y si éste no queda demostrado, no existirá acto ilícito civil… El actor ha de demostrar, por tanto, la realidad del daño que le ha sido inferido y su cuantía". *Id*.

Por último, el deber de indemnizar "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". Estremera v. Inmobiliaria Rac., Inc., 109 D.P.R. 852, 856

(1980). En Puerto Rico rige la doctrina de la causalidad adecuada, lo cual quiere decir que "no es causa toda condición sin la cual no se hubiera producido el resultado, **sino la que ordinariamente lo produce según la experiencia general**". Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974)(énfasis nuestro). Este concepto de la causa postula, además, que la ocurrencia del daño que da base a la reclamación era previsible dentro del curso normal de los acontecimientos. Es decir, causa es la condición que ordinariamente produce el daño, según la experiencia general, y este nexo causal puede romperse ante la ocurrencia de un acto extraño. Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 310 (1990).

## IV.

La norma amplia y general del artículo 1802 del Código Civil y los conceptos generales en los que dicha norma está cimentada permiten que el derecho de responsabilidad civil extracontractual responda a los cambios y necesidades sociales de la época. GIOVANNA VISINTINI, TRATADO DE LA RESPONSABILIDAD CIVIL XII (1999) [prólogo de Aida Kemelmajer de Carlucci]. Esta norma le otorga al juez amplio margen para darle contenido concreto al momento de dictar sentencia. *Id.* Para alcanzar dicha finalidad el juzgador de hechos está llamado a interpretar la norma a partir de los hechos a los que se enfrenta. Explica Puig Brutau, que "se habla de interpretación cuando… se exige cierto esfuerzo reflexivo o de razonamiento. Interpretar significa alcanzar

la compresión de unos hechos significativos a través de una actividad razonadora que permite pasar de lo dudoso a lo cierto, de lo desconocido a lo conocido". JOSÉ PUIG BRUTAU, INTRODUCCIÓN AL DERECHO CIVIL 302 (1981). A través de esta actividad razonadora logramos ajustar las normas existentes a los cambios de la época. Es por esto que en el campo del derecho de responsabilidad civil extracontractual la jurisprudencia "se rectifica a sí misma con mucha frecuencia, en busca de mayor justicia y de la mejor compensación de intereses ajenos vulnerados. Asimismo, busca un ajuste más armónico con los cambiantes intereses, ideas, principios, valores y aspiraciones de la sociedad, los que son muy dinámicos". 1 HERMINIO BRAU DEL TORO, LOS DAÑOS Y PERJUICIOS EXTRACONTRACTUALES EN PUERTO RICO 1 (1986). Las finalidades de la responsabilidad civil resultan del plexo de aspectos que ésta debe satisfacer tanto en el contexto social como en atención a la víctima del daño. Graciela N. Messina de Estrella, *Función Actual de la Responsabilidad Civil*, en DERECHO DE DAÑOS 44-45 (Buenos Aires 1996). Por lo tanto, la responsabilidad civil no sólo sirve el propósito de indemnizar a la víctima, sirve también como instrumento de regulación social. *Id.* Según mencionáramos en Borinquen Furniture v. Tribunal de Distrito, 78 D.P.R. 901 (1956):

> [E]l análisis de los motivos y finalidades de la norma jurídica supone una delicada y compleja apreciación de intereses prácticos y de ideales éticos y culturales. **Sobre todo exige ahondar en las realidades de la vida, en sus exigencias económicas y sociales.** Y en esta idea fundamental están conformes las representantes de las más

opuestas escuelas. *Id*. en la nota 8 [citando a
JOSÉ CASTÁN TOBEÑAS, LA FORMULACIÓN JUDICIAL DEL DERECHO:
JURISPRUDENCIA Y ARBITRIO DE EQUIDAD 18-26, 102-128,
151-160 (1954)](énfasis nuestro).

No hemos hallado jurisprudencia o expresiones de
tratadistas de países civilistas que contemplen, desde una
perspectiva u otra, hechos similares a los del caso de
autos. Sin embargo, al recurrir a las fuentes de derecho
comparado hemos constatado que en los Estados Unidos se
vive una situación muy parecida a la nuestra, con una
creciente incidencia de accidentes automovilísticos
causados por conductores ebrios.[4] Por eso, como parte del
esfuerzo reflexivo e interpretativo que conlleva la
aplicación del artículo 1802 a la situación que presenta el
caso de autos, resulta oportuno enriquecer nuestro análisis
mediante el examen de los escritos y la jurisprudencia
desarrollada en los Estados Unidos. Sobre la utilidad de
acudir a las soluciones propuestas por jurisdicciones del
"common law" en ciertas situaciones, hemos expresado que,
si bien no es permisible intentar resolver nuestros
problemas de responsabilidad extracontractual a espaldas de
la doctrina civil aplicable, "[l]as reglas del derecho
común ["common law"] y de otros sistemas jurídicos pueden
constituir materia útil para el estudio comparado y en
ocasiones el desarrollo de instituciones autóctonas".

---

[4] Según estadísticas del Departamento de Transportación de
los Estados Unidos, en el 2002, 17,419 personas fallecieron
en accidentes automovilísticos cuya causa estuvo relacionada
al consumo de alcohol. Esto constituyó el 41% de los 42,815
accidentes fatales ocurridos durante el año. JAMES F. MOSHER,
LIQUOR LIABILITY LAW § 1.01[2] (traducción nuestra).

Gierbolini v. Employers Fire Ins. Co., *supra*, en la pág. 855. De esa forma, el préstamo jurídico consciente, en circunstancias en que es evidente su necesidad para atender las realidades del país, puede contribuir al desarrollo de doctrinas del derecho civil puertorriqueño. JOSÉ TRÍAS MONGE, EL CHOQUE DE DOS CULTURAS 367-9 (1991).

En este marco, exponemos la doctrina desarrollada en el derecho norteamericano para atender situaciones similares a la que nos plantea el caso de autos.

V.

Tradicionalmente, el derecho común angloamericano no reconocía una causa de acción contra el dueño de un negocio que vendía bebidas alcohólicas a una persona que posteriormente causaba daños. Nina J. Emerson & Sarah B. Stroebel, *Another Look at Dram Shop Liability*, 73 WIS. LAW. 14, 16 (2000); Daphne D. Sipes, *The Emergence of Civil Liability for Dispensing Alcohol: A Comparative Study*, 8 REV. LITIG. 1, 3 (1988). Se razonaba que la causa próxima del daño era el consumo y no el suministro de alcohol. Para la década de los setenta un creciente número de tribunales se alejaban de este razonamiento, **imponiendo responsabilidad a quienes vendían bebidas alcohólicas a personas que estaban visiblemente intoxicadas o a menores de edad que luego causaban daños.**[5] *Id*. En síntesis, esos tribunales resolvieron que:

---

[5] Jackson v. Cadillac Cowboy, Inc., 337 Ark. 24 (1999); Rappaport v. Nichols, 31 N.J. 188 (1959); Mason v. Roberts,

> [N]o existe fundamento válido para relevar a una persona autorizada a vender bebidas alcohólicas del deber de cuidado que tiene todo individuo. El vendedor debe actuar como una persona razonable de acuerdo a las circunstancias. Imponer esta obligación no es una carga indebida ya que el operar un negocio de este tipo es un privilegio y no un derecho que el gobierno puede regular. JAMES F. MOSHER, LIQUOR LIABILITY LAW, Vol. I, 2004, § 11.02[2][c][traducción nuestra].[6]

Eventualmente, diferentes estados fueron adoptando leyes, conocidas comúnmente como "Dram Shop Acts", para regular estas situaciones y establecer parámetros a la normativa jurisprudencial imperante.[7] Algunos comentaristas

---

35 Ohio App. 2d 29 (1971); Hurt v. Freeland, 1999 N.D. 12 (1999); Majors v. Brodhead Hotel, 416 Pa. 265 (1965); Fulmer v. Timber Inn Restaurant and Lounge, Inc., 330 Or. 413 (2000); Fairbanks v. J.B. McLoughlin Co. Inc. 131 Wash. 2d 96 (1997); Brattain v. Herron, 159 Ind. App. 663 (1974); Garofalo v. Lambda Chi Alpha Fraternity, 616 N.W.2d 647 (Iowa 2000); Berg v. Zummo, 786 So.2d 708 (La. 2001); Mt. Hope Inn v. Travelers Indem. Co., 157 N.J. Super. 431 (1978); Estate of Mullis by Dixon v. Monroe Oil Co., Inc., 349 N.C. 196 (1998); Smith v. Clark, 411 Pa. 142 (1963); Lewis v. State, 256 N.W.2d 181 (1977); Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (1979); Brattain v. Herron, 159 Ind. App. 663 (1974); Christensen v. Parrish, 82 Mich. App. 409 (1978); Huston v. Konieczny, 52 Ohio St. 3d 214 (1990); Busby v. Quail Creek Golf and Country Club, 1994 OK 62 (1994); Whitlaw v. Kroger Co., 306 S.C. 51 (1991); Cook By and Through Uithoven v. Spinaker's of Rivergate, Inc., 878 S.W.2d 934 (Tenn. 1994); Callan v. O'Neil, 20 Wash. App. 32 (1978); Norton v. Opening Break of Aiken, Inc., 319 S.C. 469 (1995); Crowe v. Gaston, 134 Wash. 2d 509 (1998).

[6] *Véase* Ontiveros v. Borak, 136 Ariz. 500 (1983); Hickingbotham v. Burke, 140 N.H. 28 (1995).

[7] Debemos señalar que las primeras legislaciones conocidas como "Dram Shop Acts" se aprobaron a mediados del siglo diecinueve como resultado del "Temperance Movement". Posteriormente muchos estados derogaron estas leyes y no fue hasta finales de los años setenta del siglo veinte (1970) que se aprobaron nuevamente estas leyes como parte de un movimiento en contra de conductores en estado de embriaguez. Godfrey v. Boston Old Colony Insurance Company, 718 So.2d 441 (La. App. 4th Cir. 1998); Daphne D. Sipes, *The Emergence of Civil Liability for Dispensing Alcohol: A Comparative Study*, 8 REV. LITIG. 1, 3-4 (1988).

clasifican estas leyes en dos grupos: las que reconocen una causa de acción contra el vendedor y las que prohíben o restringen dicha causa de acción.[8] Las leyes que reconocen la causa de acción responden, primordialmente, al interés social de compensar adecuadamente a las víctimas y evitar los accidentes automovilísticos causados por conductores ebrios. Emerson & Stroebel, *supra*. El razonamiento es que la posibilidad de responsabilidad civil debe incentivar a los dueños de negocios que venden bebidas alcohólicas a operar de manera más responsable. Más aún cuando estos establecimientos públicos, especialmente los bares y restaurantes, son los que principalmente suministran alcohol a estos conductores ebrios. Emerson & Stroebel, *supra*.

Varios estados han preferido no legislar y mantener la normativa desarrollada por los tribunales. Estas jurisdicciones también se dividen entre los que atribuyen responsabilidad a los vendedores de bebidas alcohólicas y los que no reconocen dicha responsabilidad. Los primeros derivan la responsabilidad del deber de cuidado que

---

[8] <u>Godfrey v. Boston Old Colony Insurance Company</u>, *supra*, en la pág. 446. Para 1988, la legislatura de por lo menos treinta y siete (37) estados había aprobado algún tipo de "Dram Shop Act", diecinueve (19) de estos reconocen una causa de acción contra el vendedor: Alabama, Alaska, Connecticut, Illinois, Iowa, Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oregon, Rhode Island, Texas, Utah, Vermont y Wyoming. Por el contrario, dieciocho (18) estados prohíben o restringen dicha causa de acción: Arizona, California, Colorado, Florida, Georgia, Idaho, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, New Mexico, Ohio, Pennsylvania, South Dakota, Tennessee y Wisconsin. Sipes, *supra*, en la pág. 4.

corresponde a los modernos estándares de negligencia o de los estatutos criminales que prohíben el suministro de bebidas embriagantes en ciertas circunstancias. MOSHER, *supra*, § 12.02[3][a].[9] Los segundos, **que son los menos**, se niegan a reconocer una causa de acción contra los vendedores de bebidas alcohólicas por entender que ello envuelve consideraciones significativas de política pública cuya determinación le corresponde a la legislatura.[10]

Respecto a la persona visiblemente intoxicada, aquellos tribunales estadounidenses que han reconocido una causa de acción contra el vendedor han señalado que para liberarse de responsabilidad éste **tiene el deber de observar la apariencia física y el comportamiento del consumidor en búsqueda de signos de intoxicación**, para determinar el momento en el que se le debe suspender la venta de bebidas, ante el riesgo de intoxicación. MOSHER, *supra*, § 13.03[1][a].[11] Algunos estados han aclarado que el demandante, por su parte, debe demostrar que el vendedor sabía o debió haber sabido que el cliente estaba intoxicado. Copeland v. Tela Corp., 996 P.2d 931 (Okla. 1999).

---

[9] Myers v. South Seas Corp., 76 Haw. 161 (1994); Chico Corp. v. Poole, 732 S.W.2d 306 (Tex. 1987).

[10] Mosher, *supra*, § 12.02[3][c]. *Véase además* McCall v. Villa Pizza, Inc., 636 A.2d 912 (Del. 1994).

[11] O'Hanley v. Ninety-Nine, Inc. 12 Mass. App. 64 (1981); Gottlin v. Graves, 40 Mass. App. Ct. 155 (1996); McGee v. Alexander, 37 P.3d 800 (2001).

Además, ciertas jurisdicciones han requerido que se demuestre: 1) que el vendedor le suplió licor a una persona intoxicada; 2) que la persona estaba visiblemente intoxicada al momento en que se le sirvió la última bebida alcohólica; 3) que el vendedor sabía o cualquier persona prudente y razonable hubiera sabido que la persona estaba visiblemente intoxicada en ese momento y 4) que la negligencia en servir el licor a la persona intoxicada sea la causa próxima de los daños del demandante. Beaulieu v. The Aube Corp., 796 A.2d. 683 (ME 2002).

También se ha definido una persona intoxicada como aquella que se encuentra en un estado en el cual las facultades mentales o físicas están afectadas por el uso del licor y/o drogas. Por otro lado se ha establecido que una persona está visiblemente intoxicada cuando la intoxicación está acompañada por un acto perceptible o una serie de actos visibles, que claramente manifiestan el estado de intoxicación. *Id.* Ante dicha manifestación, es previsible que la persona intoxicada pueda cometer actos que resulten en perjuicio suyo o de terceros. Brannigan v. Raybuck, 667 P.2d. 213 (Ariz. 1983).

En cuanto al elemento de causalidad, el razonamiento tradicional de que la causa próxima del accidente es el consumo y no el suministro de alcohol ha quedado rezagado en los Estados Unidos. Ante la innegable realidad del gran número de personas que diariamente discurren por las vías públicas en vehículos de motor y la alta incidencia de

accidentes automovilísticos causados por conductores ebrios, los tribunales actualmente se inclinan a resolver que resulta previsible que el suministro de bebidas alcohólicas a menores de edad o a personas visiblemente intoxicadas pueda ser causa de un accidente automovilístico.[12] Mosher, *supra*, § 14.04[1].

Al presente, la responsabilidad del vendedor de bebidas alcohólicas en los diferentes estados de los Estados Unidos depende de que algún estatuto regule dicha responsabilidad o que los tribunales reconozcan una causa de acción bajo los preceptos básicos del *common law*. El alcance de esta causa de acción variará, a su vez, conforme al peso que cada jurisdicción otorgue a varios factores, entre éstos: si el suministro de alcohol fue a un menor de edad o a un adulto; si el alcohol fue suministrado por un vendedor en un establecimiento comercial o por un anfitrión social; si el perjudicado fue el consumidor del alcohol o un tercero inocente. 2 DAN B. DOBBS, THE LAW OF TORTS 900-2 (2001 & Supl. 2005).

## VI.

En el caso de autos el joven Rafael Lugo Porrata Doria condujo su automóvil en estado de embriaguez. Dicha actuación claramente viola las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico y la política pública

---

[12] *Véase* Nehring v. LaCounte, 219 Mont. 462 (1986); Lopez v. Maez, 98 N.M. 625 (1982); Venetoulias v. O'Brien, 909 S.W.2d 236 (Tex. App. 1995).

que impera en nuestro sistema jurídico. Desde principios del siglo pasado resolvimos que teniendo en cuenta el efecto que las bebidas alcohólicas causan en los sentidos y facultades motoras de las personas, incurre en negligencia el conductor que maneja un vehículo de motor en estado de embriaguez. Pueblo v. De Jesús, 18 D.P.R. 960 (1912).

Sin embargo, la negligencia del conductor no excluye, de suyo, la responsabilidad de posibles cocausantes del daño. Tampoco queda excluida la responsabilidad de un posible cocausante por la sola razón de que no hay un estatuto que le imponga un deber de actuar de manera específica. **Nuestro derecho de daños no requiere que se demuestre violación a una ley, sólo requiere que se prueben los elementos previstos por el artículo 1802 del Código Civil.** Inclusive, cabe señalar que:

> [E]l cumplimiento con un estatuto o un reglamento no exime de por sí de responsabilidad, si ante las circunstancias particulares del caso un hombre prudente y razonable hubiese tomado precauciones adicionales. De otra parte, el incumplimiento de un estatuto o un reglamento no conlleva de por sí responsabilidad a menos que exista relación causal entre el resultado dañoso y el incumplimiento. BRAU DEL TORO, *supra*, en la pág. 175.

Por tanto, no se debe excluir, de entrada, la posible responsabilidad de un establecimiento comercial dedicado al expendio de bebidas alcohólicas por el daño causado por un conductor ebrio, por la sola razón de que a estos establecimientos no se les haya impuesto por ley la obligación de llevar a cabo determinados actos frente a un

cliente embriagado.[13] La legislación que regula la obligación extracontractual proveniente de actos culposos o negligentes no exime a los negocios dedicados al expendio y venta de bebidas alcohólicas de actuar responsablemente. Esta conclusión encuentra apoyo en la política pública que

---

[13] El 11 de octubre de 2005 se presentó el Proyecto del Senado Núm. 1014 que propone enmendar la Ley Núm. 470 de 23 de septiembre de 2004 con el siguiente propósito:

> Mediante esta ley, la Asamblea Legislativa dispone que todo negocio, comercio o establecimiento con licencia para el expendio y venta de bebidas alcohólicas para consumirse en sus predios, no permita la salida de ningún consumidor en estado de intoxicación y embriaguez, sin antes cerciorarse de que éste tiene conocimiento de que se le puede asistir para la obtención de alternativas de transportación segura.
>
> Por otro lado, esta ley pretende imponer responsabilidad civil a toda persona, negocio, comercio o establecimiento en casos de accidentes de tránsito causados o sufridos por algún consumidor, bien fuere como conductor o peatón, que surjan como consecuencia del expendio o venta ilegal de bebidas alcohólicas. La venta o expendio ilegal incluye aquella hecha a menores de edad; a una persona que se encuentre en aparente estado de intoxicación y embriaguez o durante horas o días en que esa venta o expendio estén prohibidos por ley. Exposición de Motivos, P. del S. 1014 de 11 de octubre de 2005.

Por otro lado, el 29 de agosto de 2005 se presentó el Proyecto de la Cámara de Representantes Núm. 1887 que dispone:

> (1) Se instituye como requisito indispensable para la expedición y renovación de licencias de bebidas alcohólicas la certificación de cumplimiento con un curso de capacitación para la venta responsable de alcohol… Se dispone que dicho curso atenderá con énfasis prioritario la necesidad de evitar el acceso al consumo de alcohol por parte de la población menor de 18 años y restringir la venta desmesurada de alcohol en la población general, de manera que no se le provea más alcohol a personas intoxicadas o con altas probabilidades de serlo. Artículo 1 del P. de la C. 1887 de 29 de agosto de 2005.

se desprende de la legislación anteriormente citada. En Ramos v. Carlo, 85 D.P.R. 353, 359 (1962), señalamos:

> [L]a necesidad de una convivencia social ordenada impone un deber general de corrección y de prudencia en relación con los demás ciudadanos, **y el acto es ilícito en el sentido extracontractual cuando viola los deberes generales de corrección social o de conducta correcta**, deberes que no están escritos en los códigos pero que representan el presupuesto mínimo sobreentendido del orden de la vida social. Énfasis nuestro).

Igualmente hemos explicado, al referirnos al deber de diligencia plasmado en el artículo 1057 del Código Civil, 31 L.P.R.A. § 3021, que "el deber social de prever el daño a otro es inmutable. No cambia. **Sí hay mudanza, con el correr de los tiempos, en lo que respecta a las cosas y riesgos a preverse**. Así, con plena conciencia de las mutaciones sociales, el Art. 1057 proyecta *ad infinitum* el deber de no causar daño, **en las variantes circunstancias de cada época**." Rivera v. Maryland Casualty Co., 96 D.P.R. 807, 811 (1968)(énfasis nuestro).

Resolvemos que viola el deber general de corrección y de prudencia aquél que actúa en claro menosprecio de la seguridad de los demás, al vender bebidas alcohólicas irresponsablemente a sabiendas del riesgo que crea. Después de todo, la concesión de una licencia es un privilegio y no un derecho. Belmonte v. Mercado Reverón, 95 D.P.R. 257, 261 (1967). Quien se lucra económicamente de una actividad que pone en riesgo la salud y vida de las personas tiene el deber de actuar prudente y diligentemente. Existe en nuestro ordenamiento un deber moral, social y jurídico de

parte no sólo del que consume sino también del que se lucra del suministro de bebidas alcohólicas de actuar responsablemente.

Por lo tanto, claramente procede una causa de acción en daños y perjuicios bajo el artículo 1802 del Código Civil para responsabilizar a un establecimiento comercial por suministrar bebidas alcohólicas a una persona visiblemente intoxicada que posteriormente causa daños al conducir un automóvil bajo la influencia del alcohol, si se demuestra que dicho establecimiento actuó culposa o negligentemente y que existe nexo causal entre la venta negligente de alcohol y el daño causado. Erraron ambos foros inferiores al determinar en contrario y desestimar la reclamación, como cuestión de derecho, vía sentencia sumaria.

Corresponde aclarar que este deber de diligencia al suministrar bebidas alcohólicas **sólo** se extiende a establecimientos públicos dedicados a la venta de bebidas alcohólicas. Según nuestro ordenamiento, el grado de diligencia exigible depende de las circunstancias de persona, tiempo y lugar. Artículo 1057 del Código Civil, 31 L.P.R.A. § 3021. La persona dedicada a la venta de bebidas alcohólicas, a diferencia de un anfitrión social, se lucra económicamente del suministro de alcohol y tiene, por tanto, un incentivo para alentar el consumo en exceso. Además, puede asegurar su negocio por los riesgos que asume al ponerlo en marcha. *Véase* MOSHER, *supra*, §12.06[2]. Estas circunstancias justifican que no extendamos a los

anfitriones sociales este deber de diligencia en el expendio de bebidas alcohólicas.

VII.

Ahora bien, resulta necesario considerar varias interrogantes que surgen de la amplitud de esta norma en las circunstancias que presenta el caso de autos. En particular, debemos precisar qué constituye negligencia en la venta de bebidas alcohólicas y cuándo hay un nexo causal entre el suministro de alcohol y los daños causados cuando quien lo consume ocasiona un accidente automovilístico por conducir en estado de embriaguez.

Según la Ley de Vehículos y Tránsito, en Puerto Rico es ilegal que una persona mayor de dieciocho (18) años de edad "conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%), o más según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento".[14] 9 L.P.R.A. § 5202. No podemos utilizar esta prohibición legal como base suficiente para imponer responsabilidad civil a quien haya

---

[14] La Ley de Vehículos y Tránsito de Puerto Rico también dispone:

> (b) En el caso de camiones, ómnibus escolares y vehículos pesados de motor, será ilegal que se conduzcan cuando el contenido de alcohol en la sangre del conductor sea de dos (2) centésimas del uno (1) por ciento (.02%) o más.
> (c) Es ilegal que cualquier persona menor de 18 años conduzca o haga funcionar un vehículo de motor conteniendo alcohol en su sangre, según se determine dicha concentración de alcohol en el análisis químico de su sangre o aliento.

suministrado alcohol a una persona que ha alcanzado ese nivel de alcohol en la sangre. No obstante, el índice de alcohol en la sangre podrá ser un elemento a considerar al momento de determinar si, en efecto, hay tal responsabilidad. No se trata, pues, de que las personas que operan negocios de venta de bebidas alcohólicas vengan obligadas a suministrar pruebas para determinar el contenido de alcohol en la sangre de sus clientes. Simplemente resolvemos que están sujetos a un comportamiento responsable según las circunstancias de cada caso en particular.

Los síntomas de intoxicación varían según la persona y sus circunstancias particulares. Dependerá de la sustancia y cantidad ingerida, ritmo de consumo, metabolismo del individuo y otros factores. 5 ROBERT K. AUSMAN & DEAN E. SNYDER, MEDICAL LIBRARY: LAWYERS EDITION § 6:16, 8:58 (1990 & Supl. 2005). Según un estudio realizado por el entonces Departamento de Servicios Contra la Adicción en conjunto con la Administración del Derecho al Trabajo, los efectos negativos más frecuentes por el consumo de alcohol se clasifican por sus efectos en el sistema neuromuscular (temblores, nerviosidad, problemas de coordinación de piernas y rodillas, lengua pesada, mareos, sueño y dolor de cabeza), en el sistema gastrointestinal (nauseas, vómitos, diarreas, dolor de estómago, acidez y pérdida de apetito) y efectos mentales (pérdida de la memoria, depresión, mal humor, agresividad, tristeza y desinhibición). DEPARTAMENTO DE

SERVICIOS CONTRA LA ADICCIÓN (EDNA GONZÁLEZ CRUZ), MAGNITUD Y PATRONES DE

CONSUMO DE ALCOHOL EN PUERTO RICO 83 (1983)[15]. Algunos de estos

síntomas de intoxicación se manifiestan en el

comportamiento de manera que, ordinariamente, pueden

resultar suficientes, por sí solos o unidos a otras

circunstancias, para alertar a una persona de diligencia

normal u ordinaria que el bebedor está intoxicado. En vista

de esto, adoptamos el concepto de "visiblemente intoxicado"

desarrollado en el derecho común norteamericano para

limitar el ámbito de responsabilidad en estos casos.[16]

Claro está, el deber comienza al primer indicio de

---

[15] Para hacer la determinación sobre la manifestación del estado de intoxicación, los tribunales norteamericanos han tomado en consideración varios factores circunstanciales. Principalmente, han sido indicativas aquellas manifestaciones físicas del intoxicado que se perciben inevitablemente o de fácil averiguación utilizando los sentidos comunes, como por ejemplo: temblores; ojos rojos; incapacidad de expresarse coherente y fluidamente, de sostenerse y caminar autónomamente, y de dirigir los movimientos de forma coordinada y deliberada; fuerte olor a alcohol en el aliento; capacidad mínima de percepción, memoria y comprensión, y sueño, entre otras características físicas. McGee v. Alexander, 37 P. 3d 800 (OK 2001); Bruce v. KKB, 52 S.W.3d 250 (Tex. 2001); Vickowski v. Polish American Citezen Club, 664 N.E. 2d 429 (Mass. 1996), Hutchens v. Hankins, 303 S.E.2d 584 (N.C. 1983). Sin embargo, varias cortes norteamericanas han enfatizado que la evidencia de una de estas característica físicas, por sí sola, no es prueba suficiente de que la persona estaba visiblemente intoxicada. *Véase*, Senn v. Scudieri, 165 A.D.2d. 346 (N.Y. 1991).

[16] Resultaría más clara aún la responsabilidad que se deriva de los daños que se causen como consecuencia del suministro de bebidas alcohólicas a menores de dieciocho (18) años. Dicha conducta sería en abierta violación a las disposiciones del Código de Rentas Internas de 1994, 13 L.P.R.A. § 9745, y del Código Penal de 2004, 33 L.P.R.A. § 4765.

intoxicación, para así evitar el riesgo potencial que representa un conductor ebrio en nuestras carreteras.

La previsibilidad es un elemento esencial para determinar tanto el acto negligente como la relación causal entre éste y el daño reclamado. Por eso, para que ocurra un acto negligente "es suficiente que el actor haya previsto que su conducta probablemente resultaría en daños de alguna clase a alguna persona aunque no hubiese previsto las consecuencias particulares o el daño específico que resultó, ni el mecanismo particular que lo produjo, ni la persona específica del perjudicado". *Id*. en las págs. 184-5.

Claro, que según hemos expresado anteriormente, el deber de previsión **no** se extiende a todo peligro imaginable que pueda amenazar la seguridad de las personas; **la norma de responsabilidad es que el riesgo que debe preverse debe estar basado en probabilidades y no en meras posibilidades.** Véase: Hernández v. Gobierno de la Capital, 81 D.P.R. 1031 (1960); Brau del Toro, *supra*, en la pág. 185. **Resulta altamente previsible que una persona intoxicada, al conducir un automóvil, constituya una amenaza para su seguridad y la de terceros.** También resulta previsible, para una persona que en la actualidad se dedica a la venta de bebidas alcohólicas en Puerto Rico, que una persona que acuda a su negocio conducirá un automóvil al salir del establecimiento. El accidente puede ser, por lo tanto, un

incidente o efecto normal del riesgo creado. Resto v. P.R. Telephone Co., 97 D.P.R. 313 (1969).

Lo importante, para propósitos de precisar la responsabilidad civil del que vendió la bebida, es determinar el estado de la persona al momento en que se le sirvió. Esto resulta particularmente importante ante la dificultad de imputarle al dueño o al empleado del negocio conocimiento sobre el alcohol consumido por el cliente antes de llegar a su establecimiento. *Véase* Williams v. Kingston Inn, Inc., 58 Wash. App. 348 (1990). Por lo tanto, el juzgador de hechos determinará, caso a caso, si las circunstancias posteriores a la entrada del cliente al negocio eran tales que el empleado o dueño **sabía, o debía saber**, que la persona estaba visiblemente intoxicada, a la luz del estándar del buen padre de familia que impone nuestro ordenamiento civilista, y que con toda probabilidad conduciría un automóvil al abandonar su negocio.

El establecimiento que responde es aquél que previó o pudo haber previsto las consecuencias racionales de continuar suministrando bebidas alcohólicas a personas visiblemente intoxicadas. Esto significa que al determinar si un establecimiento debe responder se deben examinar las circunstancias específicas de cada caso. Así, deben considerarse circunstancias como el tiempo que la persona permaneció en el local, la cantidad de bebidas alcohólicas ingeridas antes de abandonar el establecimiento, el tipo de

bebida consumida, la cantidad de dinero gastado para comprar alcohol, la combinación de consumo de alcohol y comida, el tiempo transcurrido entre el acto dañino y el consumo de alcohol, y la distancia entre el accidente y el establecimiento. *Véase*, Steak & Ale of Texas, Inc. v. Borneman, 62 S.W.3d 898 (Tex. 2002); Bruce v. KKB, 52 S.W. 3d 250 (Tex. 2001); Adkinson v. Thompson, 650 So. 2d 859 (Ala. 1994); Hutchens v. Hankins, 303 S.E.2d 584 (N.C. 1983); Beaulieu v. The Aube Corp.,726 A.2d 683 (ME 2002); Hocker v. O'Klock, 158 N.E.2d 7 (Ill. 1959). Buchanan v. Merger Enterprises, Inc.,463 So.2d. 121 (Ala. 1985); Ontiveros v. Borak, 667 P.2d. 200 (Ariz. 1983).

Resumiendo, debe hacerse un balance entre el deber del establecimiento de observar la conducta de los consumidores y los factores que puedan afectar su percepción. A fin de cuentas lo que se requiere es que dentro de sus circunstancias particulares el establecimiento actúe responsablemente.

Debemos aclarar que la norma que hoy adoptamos **no** constituye una norma de responsabilidad absoluta para los negocios de venta de bebidas alcohólicas. **La responsabilidad incurrida por éstos dependerá de las circunstancias de cada caso específico y corresponderá al juzgador de hechos determinar, mediante preponderancia de prueba, si hubo culpa o negligencia en la venta de bebidas alcohólicas y si resultaba previsible que el cliente**

**conduciría un vehículo de motor**. 32 L.P.R.A. Ap. IV, R. 10(f).

Respecto al nexo causal resolvemos que el suministro de alcohol y no sólo su consumo podría constituir la causa adecuada de un accidente como el de autos.[17] La doctrina de la causalidad adecuada requiere de índices o criterios fundados en la experiencia y el conocimiento de causas y efectos para darle contenido. BRAU DEL TORO, *supra*, en la pág. 697. Coincidimos con el profesor Brau del Toro quien, citando a De Cossio, señala:

> [A]firmar que una causa es adecuada equivale a decir que puede producir un efecto, que es idónea para causarlo; no que necesariamente haya de dar lugar al mismo. El juicio de posibilidad, nos dice, deberá comprender todas aquellas circunstancias que existan en el momento de llevarse a cabo la acción (aunque fueran conocidas después) y además aquellas otras cuya producción posterior, según la experiencia humana, debía ser prevista en cuanto favorecidas por aquel acto. Este conocimiento,… será el que habría tenido un hombre medio por regla general pero también habrán de ser tenidas en cuenta las condiciones que por razón de su profesión o cualquier otra circunstancia pudo tener el agente al efectuar el acto. BRAU DEL TORO, *supra*, en la pág. 697 (*citando a* A. DE COSSIO, LA CAUSALIDAD EN LA RESPONSABILIDAD CIVIL: ESTUDIO DEL DERECHO ESPAÑOL, Anuario de Derecho Civil 530-31 (1966)).

La Exposición de Motivos de la Ley Núm. 132 de 3 de junio de 2004 para enmendar la Ley de Vehículos y Tránsito, que recoge estadísticas para el año 2001, indica que ese año, cuatrocientos noventa y seis (496) personas murieron

---

[17] Debemos recordar que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". Art. 1802 CÓD. CIV. P.R., 31 L.P.R.A. § 5141.

en accidentes de tránsito. El sesenta y cinco por ciento (65%) de esas muertes eran de personas que se encontraban entre los dieciséis (16) y treinta y nueve (39) años de edad. Doscientas treinta y siete (237), casi la mitad de esas fatalidades, ocurrieron entre las seis de la tarde (6:00 pm) y las tres de la mañana (3:00 am); mientras que el sesenta por ciento (60%) ocurrieron entre viernes, sábado y domingo. Para ese mismo año, la Policía de Puerto Rico reportó sobre catorce mil (14,000) intervenciones por conducir en estado de embriaguez, de las cuales sobre doce mil (12,000) dieron resultados de más del ocho por ciento (8%) de nivel de alcohol en la sangre. En el ejercicio responsable de nuestra función adjudicativa, no podemos abstraernos de estos datos que surgen del proceso legislativo.

Ante la alta incidencia de accidentes automovilísticos causados por conductores ebrios y el gran número de puertorriqueños que conducen vehículos de motor, **resolvemos que la venta de bebidas alcohólicas a una persona que está visiblemente intoxicada sería una actuación negligente que podría constituir la causa adecuada de un accidente ocasionado por conducir en estado de embriaguez.**[18] Una vez

---

[18] En Puerto Rico hay registrados, aproximadamente, más de 2.6 millones de vehículos de motor y más de 2 millones de conductores autorizados, que a diario transitan por las carreteras de la Isla. Exposición de Motivos, P. del S. 819 de 21 de junio de 2005.

Según estadísticas del Departamento de Justicia, los conductores ebrios son responsables de un cuarenta y tres por ciento (43%) de las muertes ocasionadas en accidentes de tránsito y de otros accidentes que provocan lesiones

más, corresponderá al juzgador de los hechos determinar si a la luz de las circunstancias particulares de cada caso procede imponer responsabilidad y si existió alguna causa interventora que conforme a la normativa de la responsabilidad aquiliana rompa el nexo causal entre el suministro negligente del alcohol y los daños causados.[19]

---

corporales o daños a la propiedad. Orden Administrativa 95-20 del Departamento de Justicia, *disponible en* http://www.justicia.gobierno.pr.

[19] La participación del conductor intoxicado en un concurso de velocidad ("regateo") al salir del establecimiento comercial, como alega *El Patio de Sam* que ocurrió en el caso de autos, podría constituir una causa interventora que exoneraría de responsabilidad al vendedor. Como sabemos, una causa interventora "consiste de una causa o una agencia de origen independiente que surge o entra en operación con posterioridad a la conducta negligente del actor, rompiendo todo nexo de causalidad entre dicha conducta y el hecho dañoso resultante, al participar dicha nueva causa en forma activa y determinante en la producción del resultado dañoso". BRAU DEL TORO, en la pág. 724. En el caso de autos, el foro de instancia expresó que "[a]l momento de ocurrir el accidente iban conducidos en la misma dirección y a velocidad exagerada los vehículos Honda color rojo, Ford Mustang color rojo, Eagle Talón color blanco, Rabbit azul claro y el referido Beretta color negro". Además, el informe preparado por la Policía de Puerto Rico señala que el primer auto "transitaba por el carril derecho… a mayor velocidad de la permitida por ley en unión a los autos 2, 3 y 4 (Regateo)".

La Ley de Vehículos y Tránsito prohíbe "terminantemente las carreras de competencia o regateo, los concursos de velocidad y los concursos de aceleración en las carreteras estatales y municipales en Puerto Rico… ". 9 L.P.R.A. § 5127. Esta legislación define "regateo" de la siguiente manera:

Significará el uso no autorizado por el Secretario de uno (1) o más vehículos o vehículos de motor, en un intento, exista o no mutuo acuerdo, por rebasar, o impedir que otro vehículo o vehículo de motor le pase para llegar a un lugar delante de otro vehículo o vehículo de motor, o para probar la resistencia física de los conductores a través de largas distancias. A los fines de este capítulo, se entenderán incluidos dentro de esta definición, las carreras de competencia, los concursos de velocidad y los concursos de aceleración, incluyendo aquellas ilegales que se llevan a cabo en áreas o vías públicas no autorizadas para este tipo de evento. 9 L.P.R.A. § 5001(81).

Por todo lo antes expuesto resolvemos que erraron los foros inferiores al determinar que no procede, como cuestión de derecho la reclamación instada en el caso de autos contra *El Patio de Sam*. En virtud de esta determinación, procedería revocar la determinación sumaria del foro de instancia y devolver el caso a ese Tribunal para la continuación de los procedimientos. Sin embargo, confirmamos la sentencia recurrida por entender que concederle efectos prospectivos a la norma pautada es lo que en justicia procede. Esta determinación corresponde al ejercicio de nuestra discreción judicial, fundado en consideraciones de política pública y orden social y teniendo siempre presente que nuestro norte debe ser conceder remedios justos y equitativos que respondan a la mejor convivencia social. Rexach Const. Co., Inc. v. Mun. de Aguadilla, 142 D.P.R. 85 (1996). En el caso de autos, a pesar de que la norma pautada se desprende claramente del artículo 1802 del Código Civil, reconocemos que sería injusto darle efectos retroactivos, ante las dificultades que plantea su aplicación debido a la ausencia de parámetros y expresiones anteriores por parte de este Tribunal. Por lo tanto, resolvemos que la norma pautada deberá aplicarse a hechos que surjan con posterioridad a esta decisión.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ana Teresa López y otros<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Demandados-Recurridos<br><br>v.<br><br>Jessica Lugo Porrata Doria y otros<br><br>v.<br><br>Ricardo J. Calderón López y otros<br><br>Demandados-Peticionarios<br><br>v.<br><br>Leonor Porrata Doria y otros<br><br>Terceros Demandados-<br>Recurridos | CC-2000-694 | CERTIORARI |

SENTENCIA

En San Juan, Puerto Rico, a 4 de octubre de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia recurrida.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Rivera Pérez emitió opinión disidente y la Jueza Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Teresa López y otros
  Demandantes-Peticionarios
              v.
Leonor Porrata Doria y otros
    Demandados-Recurridos
              v.
Jessica Lugo Porrata Doria y          CC-2000-694
otros
              v.
Ricardo J. Calderón López y
otros
    Demandados-Peticionarios
              v.
Leonor Porrata Doria y otros
Terceros Demandados-Recurridos


    Opinión Disidente emitida por el Juez Asociado Señor Rivera Pérez


    San Juan, Puerto Rico, a 4 de octubre de 2006.

    La Opinión Mayoritaria resuelve que un establecimiento comercial puede estar sujeto a una reclamación en daños y perjuicios bajo el artículo 1802 del Código Civil[20] por suministrar bebidas alcohólicas a una persona que posteriormente causa daños al conducir un automóvil bajo la influencia del alcohol. Establece que la venta negligente de bebidas alcohólicas podría constituir la causa adecuada de un accidente ocasionado por conducir en estado de embriaguez. Concluye la Mayoría que le corresponde al juzgador de los hechos determinar

---

[20] 31 L.P.R.A. sec. 5141.

sobre tal responsabilidad, según el cuadro fáctico de cada caso. Por entender que la acción de autos no cumple con los elementos que constituyen la causa de acción contenida en el artículo 1802 del Código Civil, *supra*, y que es procedente la desestimación sumaria de la reclamación en contra de *El Patio de Sam*, **DISIENTO**.

I

Las obligaciones originadas en culpa o negligencia tienen como base principal el artículo 1802 del Código Civil[21]. Este artículo lee de la forma siguiente:

> El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.

En numerosas ocasiones, este Tribunal ha expresado que todo perjuicio, material o moral, conlleva reparación si concurren tres requisitos: 1) la presencia de un daño real; 2) que el mismo haya surgido a raíz de un acto u omisión culposo o negligente; y 3) que exista un nexo causal entre el daño sufrido y el acto u omisión.[22]

La culpa o negligencia es la falta del debido cuidado. Consiste en no anticipar y prever las consecuencias racionales de un acto o de su omisión, las cuales una

---

[21] 31 L.P.R.A. sec. 5141.

[22] Santiago v. Sup. Grande, 2006 T.S.P.R. 12, 2006 J.T.S. 21, 166 D.P.R. ___ (2006); López y otros v. Dr. Cañizares, 2004 T.S.P.R. 160, 2004 J.T.S 165, 163 D.P.R. ___ (2004).

persona prudente y razonable habría previsto en las mismas circunstancias.[23]

Para que exista responsabilidad por un daño causado por la negligencia de otro, es necesario que entre éste y aquella exista una relación causal.[24] En nuestra jurisdicción rige la doctrina de la causalidad adecuada. Esta doctrina establece que no es causa de responsabilidad toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general.[25] Hemos expresado que:

> [U]n daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso, mirándolo retrospectivamente, el mismo parece ser la consecuencia razonable y común de la acción u omisión de que se trate.[26]

Un elemento esencial de la responsabilidad por culpa o negligencia es el factor de la previsibilidad. El deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible.[27] No obstante, también hemos

---

[23] Rivera v. S.L.G. Díaz-Otero, 2005 T.S.P.R. 116, 2005 J.T.S. 121, 165 D.P.R.__ (2005); Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997).

[24] Elba A.B.M v. U. P. R., 125 D.P.R. 294 (1990).

[25] Santiago v. Sup. Grande, supra; Toro Aponte v. E.L.A., supra.

[26] Santiago v. Sup. Grande, supra; Admor. F.S.E. v. ANR Const. Corp., 2004 T.S.P.R. 154, 2004 J.T.S. 162, 163 D.P.R.___ (2004).

[27] Admor. F.S.E. v. ANR Const. Corp., supra; Elba A.B.M v. U. P. R., supra.

resuelto que esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues el deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad, sino a aquél que llevaría a una persona prudente a anticiparlo.[28] Si el deber de previsión se extendiese a todo peligro imaginable o a todos los posibles riesgos, estaríamos hablando prácticamente de una responsabilidad absoluta.[29]

II

El Tribunal de Primera Instancia desestimó sumariamente la causa de acción de daños y perjuicios en contra del restaurante-barra *El Patio de Sam* porque en nuestra jurisdicción no se ha reconocido que los negocios dedicados a la venta de bebidas alcohólicas tengan un deber jurídico hacia sus clientes de actuar con especial cuidado. Concluyó sobre la inexistencia de la causa de acción de autos lo siguiente:

> (...)la pobre precisión de establecer dónde tuvo lugar la intoxicación con el licor, la asunción del riesgo que acarrea ingerir bebidas alcohólicas, el factor de la verdadera causalidad el cual consiste en tomarse el licor voluntariamente y no en suministrarlo y la onerosidad en que se traduce la imposición de la exigencias reclamadas por los demandantes a este tipo de negocios.[30]

---

[28] Elba A.B.M v. U. P. R., *supra*; Pacheco v. A.F.F., 112 D.P.R. 296 (1982).

[29] Pacheco v. A.F.F., *supra*.

[30] Apéndice del recurso de *Certiorari*, pág. 35-36.

El anterior Tribunal de Circuito de Apelaciones confirmó el dictamen del foro primario. Determinó que procedía como cuestión de derecho, dictar sentencia sumaria a favor del demandado apelado, *El Patio de Sam*, por no estar en controversia que no existe en nuestro sistema de derecho o que no está reconocida una reclamación como la aquí instada.[31] Inconformes con tal decisión, los peticionarios acuden ante nos, alegando que el acto de venderle alcohol a una persona que ya se encuentra en un estado de intoxicación es la causa adecuada de una reclamación como la de autos. Añaden que, estando en controversia los hechos que establecen la previsibilidad y causalidad, respecto al deber de *El Patio de Sam* de anticipar que sus clientes posiblemente tendrían que guiar un automóvil, procede que el caso se devuelva para verse en sus méritos y así determinar si procede la acción en contra de dicho negocio.

La Opinión mayoritaria determina que ambos foros inferiores erraron al desestimar la reclamación en contra de *El Patio de Sam*, pues "claramente procede una causa de acción en daños y perjuicios bajo el artículo 1802 para responsabilizar a un establecimiento comercial por suministrar bebidas alcohólicas a una persona que posteriormente causa daños al conducir un automóvil bajo la influencia del alcohol, si se demuestra que actuó culposa o negligentemente y que existe nexo causal entre dicha acción

---

[31] Íd., pág. 12.

y el daño causado". Adoptó el concepto de "visiblemente intoxicado"[32], en cuanto a que para propósitos de precisar la responsabilidad civil del que vendió la bebida, lo importante es determinar el estado de la persona al momento en que se le sirvió. Además, señala que resulta altamente previsible para una empresa que se dedica a la venta de bebidas alcohólicas en Puerto Rico, que una persona que acuda a su negocio a consumir, conducirá un automóvil al salir del establecimiento.

## III

Tal como mencionamos, para que se configure una acción bajo el artículo 1802, *supra*, tiene que haber un daño real, un acto u omisión culposo o negligente y nexo causal entre el daño y dicho acto u omisión. No hay duda de que la prueba de autos demuestra la presencia de un daño real, pero no coincidimos con la mayoría de que la actuación de *El Patio de Sam*, de venderle bebidas alcohólicas a Rafael Lugo Porrata Doria, podría ser una acción culposa o negligente y ser la causa adecuada del accidente ocurrido. Rafael Lugo Porrata Doria acudió voluntariamente al *Patio de Sam*, donde también, voluntariamente ingirió bebidas alcohólicas. De forma irresponsable, decidió conducir su automóvil y participar en un regateo de automóviles con sus otros amigos, provocando un lamentable accidente. ¿Cuál es el acto culposo o negligente de *El Patio de Sam*? La

---

[32] Concepto desarrollado en el derecho común norteamericano para limitar el ámbito de responsabilidad en estos casos.

doctrina sobre causalidad adecuada establece que la conducta que causa el daño no incluye toda condición sin la cual no se hubiera producido el mismo, sino la que **ordinariamente lo produce según la experiencia general**. Es harto conocido que el consumo de alcohol en exceso puede distorsionar los reflejos de una persona, provocando dificultad para conducir de manera efectiva y diligente un vehículo de motor. La persona que consume bebidas alcohólicas conoce que es previsible que sus facultades para conducir un automóvil se vean afectadas y que puede provocar un accidente y así daños a un tercero. Quien tiene que prever la ocurrencia de posibles daños es la persona que voluntariamente acude a un negocio a ingerir bebidas alcohólicas, y no el establecimiento comercial que las vende. ¿Pretende la mayoría que el establecimiento esté pendiente de cuántas bebidas alcohólicas ingiere cada persona que acuda al lugar y que a la vez prevea que cada uno de ellos va a conducir? No podemos imponerle a los establecimientos dedicados a la venta de bebidas alcohólicas el deber de prever la situación y los riesgos que puede provocar cada persona que acuda allí y consuma alcohol.

A raíz de la determinación de la mayoría, surgen interrogantes como las siguientes: ¿Qué sucedería cuando en el negocio hay doscientas (200) personas y en los eventos donde acuden miles de personas, como por ejemplo juegos de "baseball", en los cuales se venden cervezas y otros

licores? ¿Qué sucedería cuando la persona que consumió bebidas alcohólicas y causó un accidente acudió a más de un establecimiento a consumirlas? Imputarle al establecimiento la responsabilidad de prever un posible accidente, implicaría que investigue cuáles consumidores conducirán un automóvil al salir del local, además de que tendría que llevar la cuenta del número de bebidas ingeridas por cada uno. Esto acarrea, además, otras situaciones que podrían ocasionar otro tipo de problemas jurídicos como por ejemplo: ¿qué se supone que haga el encargado del negocio, evitar que el que ha ingerido varias bebidas alcohólicas y aparente estar ebrio conduzca? ¿Cómo puede evitarlo? ¿Puede obligarle a no hacerlo?

Algunos estados de la Unión han reconocido la causa de acción, que hoy la Mayoría reconoce en contra de los establecimientos que se dedican a la venta de bebidas alcohólicas. Otros estados han sido persistentes en considerar que la causa próxima de estos accidentes es el consumo de alcohol y no su suministro. Concluir que el suministro en vez del consumo de alcohol puede constituir la causa adecuada de un accidente, implicaría en imponerle a otra persona la responsabilidad de las personas que voluntariamente ingieren alcohol a sabiendas de que su exceso puede causar accidentes automovilísticos fatales.

Reconocemos que los accidentes automovilísticos causados por personas en estado de embriaguez ocurren constantemente y que muchas veces son lamentables sus repercusiones. No

obstante, entendemos que imponerle a los establecimientos comerciales que se dedican a la venta de bebidas alcohólicas responsabilidad, como medio para aliviar el problema social de conductores ebrios que provocan accidentes en las carreteras, es un acto de formulación de política pública. Le corresponde a la Rama Legislativa legislar a esos efectos. Los proyectos de ley existentes, persiguiendo este fin, aún no se han aprobado. Concluimos que dentro de nuestro estado de derecho actual sobre responsabilidad civil extracontractual, no es procedente tal causa de acción.

IV

La Regla 36 de Procedimiento Civil[33] provee cómo y en qué circunstancias se puede dictar una sentencia de forma sumaria. Podrá dictarse una sentencia sumaria cuando no exista una controversia real sobre los hechos materiales y esenciales del caso en cuestión.[34] Su utilización hace posible dictar sentencia, sin la necesidad de celebrar una vista en los méritos, cuando de los documentos no controvertidos que se acompañan en la solicitud de la misma, y de la totalidad de la evidencia presentada en

---

[33] 32 L.P.R.A. Ap. III R. 36.

[34] <u>Vera et al. v. Dr. Bravo et als.</u>, 2004 T.S.P.R. 30 , 2004 J.T.S. 40, 161 D.P.R.___(2004),; <u>Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.</u>, 128 D.P.R. 538 (1991).

autos, surge que no existen controversias de hecho de esa naturaleza y lo que resta es aplicar el derecho.[35]

Por lo tanto, concluimos que actuó correctamente el foro intermedio apelativo al confirmar la determinación del foro primario de dictar sentencia sumaria para desestimar la causa de acción en contra de *El Patio de Sam,* pues no existe ninguna controversia de hechos materiales sino una cuestión de estricto derecho y lo que procede es aplicarlo.

V

Por los fundamentos expuestos, entendemos que no procede una reclamación bajo el artículo 1802, *supra*, en contra de *El Patio de Sam*, bajo el fundamento de que el suministro de bebidas alcohólicas puede ser la causa adecuada de un accidente ocasionado por el manejo negligente de un automóvil bajo los efectos del alcohol. Confirmaríamos la sentencia recurrida.

Efraín E. Rivera Pérez
Juez Asociado

---

[35] García Rivera et al. v. Enríquez, 2001 T.S.P.R. 12, 2001 J.T.S. 15, 153 D.P.R.___ (2001).