MANUEL RESTO NEGRÓN, ETC., ET AL., demandantes y recurridos, *v.* PUERTO RICO TELEPHONE COMPANY y EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrente el segundo; ANASTACIO ORTIZ, tercero demandado-recurrido.

*Números:* R-66-145–R-66-147.          *Resueltos:* 14 de mayo de 1969

314

*Ángel Manuel Ciordia*, abogado de los demandantes y recurridos; *Rivera Zayas, Rivera Cestero & Rúa,* y *Adrián Mercado,* abogados de la P.R. Telephone Company; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico; *Héctor Martínez Muñoz,* abogado de Anastacio Ortiz.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El 20 de febrero de 1960 el menor Manuel Enrique Resto sufrió un accidente. El tribunal de instancia determinó que:

"El día 20 de febrero de 1960, Manuel Enrique Resto había estado en la tienda de Enrique Montes con sus padres haciendo la compra. Su padre Manuel Resto Negrón le dio dos galones de gas metidos dentro de un saco para que los llevara a su casa. Manuel Enrique Resto y un hermano menor se encaminaron hacia su casa, por la carretera número 149, en dirección de Villalba hacia Ciales, tomando el paseo del lado izquierdo. Al llegar al Km. 20 Hm. 5 donde estaba la rama mencionada [ésta había sido cortada el 20 de enero de 1960, por el contratista independiente Anastacio Ortiz Torres, en virtud de un contrato de desganche con la P. R. Telephone Co. quien a su vez había obtenido un permiso para cortar las ramas que estuvieran en contacto con sus líneas, del Departamento de Obras Públicas], Manuel Enrique Resto se paró a bregar con el saco, bajándolo al

suelo. Entonces se encontraba parado en el paseo muy pegado a la rama.

En ese momento un vehículo de pasajeros que discurría en dirección de Villalba hacia Ciales se paró a su lado derecho pero sobre el pavimento de rodaje de la carretera, en dirección opuesta a donde se encontraba Manuel Enrique Resto bregando con el saco. De la curva que queda hacia Villalba a pocos metros del sitio donde se encontraba estacionado el porteador público, salió otro vehículo que intentó pasarle al que estaba estacionado por su lado izquierdo. La rueda izquierda delantera de dicho vehículo tropezó con la punta de uno y medio pies que de la rama estaba sobre la parte pavimentada de la carretera. Dicho tropezón hizo mover la rama y darle un fuerte golpe en la pierna a Manuel Enrique Resto.

.   .   .   .   .   .   .   .   .

El golpe que la rama le dio a Manuel Enrique Resto lo tiró fuera de la carretera, por la ladera del monte. Fue sacado de ese sitio por su padre Manuel Resto Negrón y otros, . . . fue conducido al Hospital Municipal de Ciales.

El golpe recibido por Manuel Enrique Resto le produjo una fractura compuesta conminuta del tercio inferior de la tibia y el peroné izquierdos, con una herida externa de cuatro pulgadas de largo en la misma zona de la fractura, con exposición de los huesos y músculos, también sufrió una fractura simple del tercio superior de la tibia y peroné de la misma pierna izquierda.

.   .   .   .   .   .   .   .   .

Del Hospital Municipal, Manuel Enrique Resto fue enviado al Hospital de Distrito de Arecibo.

. . . bajo anestesia general, se le hizo una limpieza minuciosa de la herida que tenía material extraño, madera, tierra y yerba; se le redujeron las fracturas, se inmovilizó con un yeso de la cadera al lado del pie y se hospitalizó.

El yeso puéstole a su ingreso lo tuvo hasta el 10 de marzo de 1960, cuando se le puso uno nuevo . . . .

.   .   .   .   .   .   .   .   .

Manuel Enrique Resto regresó a su casa el 12 de marzo de 1960 y se recluyó en cama. Sufrió dolores en la herida y despedía olor pestilente por donde había la fractura. Por esos motivos regresó al Hospital de Distrito el 26 de marzo de 1960.

. . . fue reingresado en el Hospital y se le administró antibióticos, por haber el peligro de que se infectara el hueso, dos veces al día hasta el 5 de abril de 1960. Luego siguió recluido hasta el 20 de abril de 1960. Durante ese tiempo se le hacían curaciones de la herida con jabón germicida por una ventana que se había hecho en el yeso.

El 20 de abril de 1960 se volvió a dar de alta para seguirle un tratamiento ambulatorio . . . .

. . . regresó a su casa el 20 de abril de 1960 y se recluyó en cama, atendiendo las visitas que hizo al Hospital para el tratamiento ambulatorio. Volvió a despedir olor pestilente en la herida y le volvieron a hospitalizar el 9 de junio de 1960.

En esta tercera hospitalización se le dieron antibióticos hasta el 28 de julio de 1960 pero siguió hospitalizado hasta el 12 de agosto de 1960.

Del 12 de agosto de 1960 al 28 de noviembre de 1961, cuando se le dio de alta definitivamente, recibió tratamiento ambulatorio, incluyendo fisioterapia.

Al 31 de enero de 1964, Manuel Enrique Resto tenía un acortamiento de dos y media (2½) pulgadas en la pierna izquierda, exhibía la herida cicatrizada de cuatro (4) pulgadas de largo por tres (3) pulgadas de ancho, con depresión en el tercio inferior de la pierna izquierda; tenía una atrofia parcial de la extremidad inferior izquierda en toda su extensión, comparada dicha pierna con la otra mostró las siguientes diferencias: a 7, y 21 pulgadas había una pulgada de diferencia en la circunferencia, y a 14 y 28 pulgadas había a una y media (1½) pulgadas de diferencia, sufría una asteoartritis del tobillo relacionada con la fractura que le produce dolor permanente para lo que necesita analgésicos, por otra parte, el acortamiento de la pierna izquierda le produce una desviación de la columna vertebral desde el tórax hasta la cadera que le produce dolor en la columna vertebral."

Los padres del menor radicaron demanda por sí y en representación de éste contra la Puerto Rico Telephone Co. y el Estado Libre Asociado de Puerto Rico. El Estado Libre Asociado radicó demanda contra co-parte, contra la Puerto Rico Telephone Co. y ésta a su vez radicó demanda contra tercero contra Anastacio Ortiz Torres (el contratista inde-

pendiente que había cortado las ramas). El Tribunal Superior de Arecibo, Sala de lo Civil, concluyó como cuestión de derecho: "El accidente a que se contrae este pleito, ocurrido el 20 de febrero de 1960, como consecuencia del cual recibieron daños y perjuicios los demandantes, se debió a la acción negligente de los empleados de Anastacio Ortiz al cortar la rama, tirarla y dejarla sobre la carretera . . . . Concurrió, para la ocurrencia del accidente, la omisión negligente del Capataz de la carretera al no remover o hacer que se removiese del sitio indicado la rama o palo, que estuvo en tal posición desde que se cortó en el período entre el día de Reyes y el 20 de enero de 1960 hasta el día del accidente, sobre 30 días, ya que usando un cuidado ordinario pudo haber tenido conocimiento de la condición de peligro que creaba la rama o palo para los usaban la carretera." Concluyó además el tribunal que: "Anastacio Ortiz Torres violó el contrato que tenía con Puerto Rico Telephone Co. . . . toda vez que no removió la rama o palo de la carretera, asumiendo, por tal incumplimiento, toda la responsabilidad surgida de tal acto negligente."

"También se concluye que dada las condiciones estipuladas en el permiso número 9.1-908-779 que el Negociado de Operaciones del Departamento de Obras Públicas del Estado Libre Asociado de Puerto Rico dio a Puerto Rico Telephone Co. para efectuar la poda . . . ésta responde al Estado Libre Asociado de Puerto Rico de la suma que se le sentencie a pagar, ya que los daños causados a los demandantes es un resultado de . . . la ejecución del trabajo . . . de poda autorizado condicionalmente.

"Anastacio Ortiz Torres—como contratista independiente —es responsable de los daños y perjuicios causados a los demandados por el acto negligente de dejar la rama o palo en la forma determinada; el Estado Libre Asociado de Puerto Rico es responsable por la negligencia del Capataz al permitir que dicha rama o palo permaneciere en la carretera por tanto

tiempo perturbando el libre uso de la misma; Puerto Rico Telephone Co. le es responsable al Estado Libre Asociado de la suma que se le sentencie a pagar conforme las condiciones del permiso concedídole; y, por razón del contrato de desganche entre Anastacio Ortiz Torres y Puerto Rico Telephone Co., dicho contratista responderá, a su vez, a la compañía lo que ésta tuviere que pagar por incumplir su obligación de '. . . remover el producto del desganche . . . .' "

El tribunal de instancia declaró con lugar la demanda condenando a Anastacio Ortiz Torres y al Estado Libre Asociado—éste hasta la suma de $15,000—a pagar solidariamente y mancomunadamente la suma de $25,000, por los daños y perjuicios sufridos por el menor; se les condenó también a pagar solidaria y mancomunadamente, a los esposos, Manuel Resto Negrón y María Ricarda Hernández la suma de $5,000.

Declaró con lugar además la demanda contra co-parte, condenando a la Puerto Rico Telephone Co. a pagar al Estado Libre Asociado de Puerto Rico aquellas sumas que éste pague por razón de esta sentencia; igualmente se condenó Anastacio Ortiz Torres a pagar a la Puerto Rico Telephone Co. aquellas sumas que ésta pague por razón de esta sentencia. Se le impuso el pago de costas al tercero demandado y al Estado Libre Asociado, al primero también se le impusieron $2,000 para el pago de honorarios de abogado.

Recurren de dicha sentencia el Estado Libre Asociado, la Puerto Rico Telephone Co. y el tercero demandado. El Estado Libre Asociado señala que erró el tribunal sentenciador al determinar que fue negligente. La Telefónica señala dos errores: error al declarar con lugar la demanda contra co-parte y error al fijar los daños en la suma de $30,000. El tercero demandado señala la comisión de seis errores: error al concluir que los daños fueron el resultado de la negligencia combinada del tercero demandado y el Estado Libre Asociado; error al dejar de concluir que los daños fueron el

resultado próximo y único de un tercero en el manejo negligente de un vehículo de motor; error al fijar los daños en $30,000; error al condenar al tercero demandado al pago de daños a los demandantes originales no obstante el hecho de que éstos nada reclamaron directamente contra él, privándose a éste de levantar contra aquéllos, entre otras, la defensa de prescripción; error al condenarlo al pago de honorarios de abogado de los demandantes; error al declarar con lugar la demanda contra tercero.

■ 1.—Analizaremos en primer lugar la responsabilidad del Estado Libre Asociado en este cuadro de hechos. Tenemos que el Art. 403 del Código Político (3 L.P.R.A. sec. 421) establece la obligación del Estado de mantener las carreteras en buen estado de conservación. Dicha obligación es una de carácter indelegable, no relevándolo de responsabilidad el haber contratado con un tercero la ejecución de la obra. [1] El Art. 404 del citado Código (3 L.P.R.A. sec. 422) establece el alcance de la responsabilidad civil del Estado en estos casos. Dispone:

"El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos."

■ Siendo indelegable la función del Estado antes discutida resulta irrelevante en la determinación de su responsabilidad el "Permiso de Desganche" otorgado a la Telefónica. Si bien es cierto que el artículo antes citado no convierte al Estado en garantizador absoluto de la seguridad de las personas que utilizan nuestras carreteras, por otro lado no

[1] *Morales Muñoz* v. *Castro*, 85 D.P.R. 288 (1962).

encontramos bajo los hechos de este caso que el accidente se debiera a la violencia de los elementos o de que no hubiera tiempo para quitar la rama en cuestión. Al contrario, la prueba demostró que dicha rama fue podada o recortada alrededor del 20 de enero de 1960, quedando allí tirada hasta el 20 de febrero (treinta días más o menos), fecha en que ocurrió el accidente, sin que ésta fuera removida por el capataz de Obras Públicas del sector, o por cualquiera de los camineros dentro de su brigada. Según el testimonio del Sr. Jaime Mayol la rama en cuestión fue podada después de Reyes, siendo dejada en el paseo, sobresaliendo como pie y medio, entorpeciendo la carretera. Declaró además que veía pasar al capataz todo los días por el sitio en donde estaba la rama, quien vivía y tenía su negocio como a un hectómetro del suyo.

El capataz del Departmento de Obras Públicas del sector declaró que pasaba de dos a cuatro veces diarias por el sitio del accidente aunque negó haber visto rama alguna entorpeciendo la carretera, sin embargo declaró que al acercarse al lugar el día del accidente la policía le mostró una rama que estaba en el paseo.

De lo antes expuesto se desprende que desde que la rama fue podada hasta el momento del accidente transcurrió un tiempo razonable y suficiente (cerca de 30 días) para que el Estado a través de su capataz o miembros de su brigada, la removiese.

No erró pues el tribunal al responsabilizar al Estado Libre Asociado por la omisión negligente de su capataz, que permitió la existencia de tal obstáculo en la carretera por espacio de alrededor de treinta días. En parecidas situaciones se ha responsabilizado al Estado en otras jurisdicciones. *Battistoni* v. *State*, 149 N.Y.S.2d 614 (1956); *Pardy* v. *State*, 210 N.Y.S.2d 248 (1960); *Jones* v. *State*, 227 N.Y.S.2d 297 (1962); *Miami Shores Village* v. *Lingler*, 157 So.2d 716 (1963); *McEvoy* v. *City of Sault Ste. Marie*, 98 N.W. 1006 (1904); *Doherty* v. *Romano*, 135 Atl. 62 (1926).

2.—Pasamos a analizar ahora la determinación de responsabilidad de la Puerto Rico Telephone Co. hecha por el tribunal de instancia. Como expusimos anteriormente la Telefónica se limita a señalar la comisión de dos errores, siendo éstos el que se declarara con lugar la demanda contra coparte, interpuesta por el Estado Libre Asociado y la determinación de la cuantía de los daños de los demandantes. A pesar de que el juez no hizo determinación expresa declarando con lugar la demanda contra la P.R. Telephone Co. es evidente que así lo determinó. Es la inevitable consecuencia de haber declarado con lugar la demanda contra tercero y la demanda contra co-parte.

El 12 de noviembre de 1959 el Secretario de Obras Públicas del Estado Libre Asociado, por conducto del Director del Negociado de Operaciones, Sr. Manuel Martorell, otorgaron un permiso de poda de árboles a la Telefónica. Este permiso en su cláusula séptima disponía que la Telefónica sería la única responsable del daño que pueda causarse a la vida o propiedad particular con la ejecución del trabajo. Consideramos que ésta no era la fuente exclusiva de la responsabilidad de la Telefónica en este permiso. Entendemos que la cláusula nueve hacía intransferible y no susceptible de subcontratación tal poda. Disponía:

"9: Este permiso es personal e intransferible y la concesionaria no podrá traspasarlo a persona alguna sin el consentimiento previo del Secretario de Obras Públicas."

No hubo prueba de tal consentimiento. Se creó pues por vía contractual unos derechos y obligaciones indelegables e intransferibles. La Telefónica subcontrató la poda en contravención a los términos expresos del permiso. Por otro lado, se violó además la cláusula seis de éste, constituyendo esta violación la causa próxima de los daños. A saber:

"6. Los productos de la poda deberán ser removidos fuera de la carretera y de sus paseos y cunetas el mismo día en que se verifique el trabajo."

Si bien es cierto que el tercero demandado era un contratista independiente, la responsabilidad de la Telefónica surge de los términos pactados y aceptados en el Permiso de Poda. No se cumplió con éstos. No erró pues el tribunal al responsabilizar a la Puerto Rico Telephone Co. en declarar con lugar la demanda contra co-parte y hacer responsable a la Telefónica de pagarle al Estado Libre Asociado aquellas sumas que éste tuviese que pagar al demandante.

En relación con el segundo error, consideradas las circunstancias del caso, la naturaleza de las lesiones recibidas, el por ciento de incapacidad de la extremidad lesionada y el por ciento de incapacidad general resultante, la edad del damnificado, lo que ganaba a la luz de la expectativa de vida y los sufrimientos y angustias mentales del menor y sus padres, no creemos que la indemnización de $30,000 sea excesiva.

3.—Pasemos a considerar los errores señalados por el tercero-demandado, el contratista que realizó la poda. Éstos se reducen a lo siguiente: error al determinar que los daños fueron el resultado de la negligencia combinada del tercero demandado y el Estado Libre Asociado, dejando a su vez de concluir que fue la negligencia única de un tercero fuera del pleito; error al hacer responsable al tercero demandado directamente al demandante original y error al declarar con lugar la demanda de tercero y al pago de honorarios de abogado.

La prueba desfilada demostró plenamente, que tanto la acción del tercero demandado, al cortar y dejar una rama obstaculizando la carretera, como la omisión del Estado Libre Asociado por su capataz, al no removerla de la carretera, se unieron para causar el daño.

Si bien es cierto que intervino un tercero en el accidente, el que con su vehículo pisó la rama, ésta fue una causa interventora que pudo ser razonablemente prevista, dado el sitio y forma en que fue dejada la rama. El accidente fue un incidente o efecto normal del riesgo creado. Se permitió

su existencia por cerca de 30 días. No se rompió la cadena de causalidad. *Ginés Meléndez* v. *Autoridad de Acueductos,* 86 D.P.R. 518 (1962); *Cruz Costales* v. *E.L.A.,* 89 D.P.R. 105 (1963). La versión del tercero demandado es al efecto de que el conductor con su vehículo impactó directamente al menor y luego fue a chocar con un árbol cercano al lugar del accidente. Que además de venir ligero dicho conductor no poseía licencia para conducir y que tenía la pierna derecha enyesada. Sin embargo el detective que investigó el accidente rebatió con su testimonio esa teoría. Testificó que había examinado e inspeccionado el vehículo y éste no mostraba desperfecto en su parte frontal. También declaró haber encontrado una rama larga, la cual se le notaban unas manchas de sangre en la parte más fina y en la parte gruesa unas huellas de goma de automóvil.

■ No erró el tribunal a quo al declarar con lugar la demanda contra tercero interpuesta por la Telefónica. Del contrato suscrito por el tercero demandado y la Telefónica el 26 de octubre de 1959, el primero se obligó "a remover el producto del desganche y poda del sitio en que se encuentre trabajando y lo depositará en los basureros municipales." No lo hizo. En dicho contrato el tercero demandado "se hace responsable a cualquier daño que se ocasione a la propiedad o personas durante la ejecución de los trabajos." A los efectos se le obligaba a obtener un póliza con cubiertas de:

| "Public Liability | $ 50,000.00 |
| Muerte accidental | 25,000.00 |
| Por grupo-personal | 250,000.00" |

No ejecutó ni cumplió en la totalidad los términos contractuales, respondiendo en tal virtud a la Telefónica por todo lo que ésta tenga que pagarle al Estado Libre Asociado y a la parte demandante más $2,000 de honorarios de abogado y las costas.

*Se confirmará la sentencia.*