ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **RAFAEL JOSÉ TORRES WEVER**<br><br>Apelado<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE P.R. y OTROS**<br><br>Apelantes | KLAN202401126 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2023CV04078**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2025.

Comparece ante nos el Estado Libre Asociado de Puerto Rico (parte apelante o ELA), por conducto de la Oficina del Procurador General de Puerto Rico, mediante un recurso de *Apelación* en el que nos solicita que modifiquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 26 de septiembre de 2024.[1] Mediante dicho dictamen, el foro primario declaró Con Lugar la *Demanda* de epígrafe,[2] y en su consecuencia, condenó al ELA a pagarle al señor Rafael José Torres Wever (Sr. Torres Wever o parte apelada) una suma de $75,000.00 por todos los daños reclamados, y en cumplimiento con los límites establecidos por la *"Ley de Reclamaciones y Demandas contra el Estado"*, Ley Núm. 104 del 29 de junio de 1955 (Ley Núm. 104-1955), según enmendada, 32 LPRA secs. 3077 *et seq.*

---

[1] Apéndice del recurso de apelación, Anejo I, págs. 1-18. Notificada y archivada en autos el 26 de septiembre de 2024.
[2] *Íd.*, Anejo V, págs. 43-48.

Número Identificador
SEN2025 _____

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 4 de mayo de 2023, el Sr. Torres Wever presentó una *Demanda* sobre daños y perjuicios en contra del ELA, la Compañía Aseguradora ABC, el Municipio Autónomo de San Juan (Municipio de San Juan), Mapfre, la Autoridad de Carreteras y Transportación de Puerto Rico (ACT) y la Compañía Aseguradora X. Alegó que el 16 de noviembre de 2022 se encontraba conduciendo su motora Harley Davidson por la Avenida John F. Kennedy, en el Municipio de San Juan. Adujo que, al llegar a la salida de la Zona Portuaria, en dirección hacia el establecimiento Alberic, la motora cayó en un desperfecto de la carretera causando que este saliera expulsado de la misma. Expuso, que era un deber gubernamental velar por la seguridad y aptitud de las carreteras públicas, y que el ELA, el Municipio de San Juan o la ACT omitieron desplegar el deber de mantenerla en un buen estado y de tomar las medidas necesarias para evitar el peligro de los que transitaran por ella. De igual forma, el Sr. Torres Wever sostuvo que dichos incumplimientos fueron la causa directa y próxima de sus lesiones, y que le causaron daños físicos, y angustias mentales y emocionales. Específicamente, adujo que sufrió fracturas en el codo, lesiones, y una herida abierta en el ante brazo y codo, la cual requirió veinticinco (25) puntos de sutura. Además, indicó que fue intervenido quirúrgicamente. Por tal razón, solicitó al foro primario una cantidad no menor de $300,000.00 en concepto de daños físicos y emocionales; una suma no menor de $7,030.90 en concepto de daños especiales por la motora Harley Davidson del 2006; más una cantidad adicional por daños punitivos, costas, gastos y honorarios de abogado.

En respuesta, el ELA, supliendo la capacidad legal del Departamento de Transportación y Obras Públicas de Puerto Rico

(DTOP), radicó una *Contestación a Demanda* el 11 de agosto de 2023.[3] En esencia, negó todas las alegaciones realizadas por el Sr. Torres Wever y como una de las defensas afirmativas alegó que la causa próxima y eficiente de los daños reclamados por el Sr. Torres Wever se debieron a los propios actos de este último o a otras personas por cuyos actos el ELA no respondía.

Posteriormente, el 11 de agosto de 2023, el TPI emitió una *Sentencia Parcial* en la que aprobó el desistimiento sin perjuicio de la causa de acción presentada en contra de la ACT, Mapfre y el Municipio de San Juan.[4]

Así las cosas, y luego del juicio celebrado en su fondo los días el 5 y 6 de septiembre de 2024,[5] el TPI emitió una *Sentencia* el 26 de septiembre de 2024 en la que declaró Con Lugar la *Demanda* del caso de marras. Así, condenó al ELA a pagarle al Sr. Torres Wever la suma de $75,000.00 en concepto de los daños reclamados.

En desacuerdo, el ELA, supliendo la capacidad legal del DTOP, radicó una *Solicitud de Determinación de Hechos Adicionales y Conclusiones de Derecho Adicionales y Moción de Reconsideración* el 11 de octubre de 2024.[6]

En respuesta, el Sr. Torres Wever presentó una *Moción en Oposición a la Solicitud de Reconsideración* el 16 de octubre de 2024.[7]

Así, el foro primario emitió una *Resolución* el 17 de octubre de 2024 en la que declaró No Ha Lugar la solicitud de reconsideración y determinaciones de hechos y de derecho adicionales radicada por el ELA.[8]

---

[3] *Íd.*, Anejo VI, págs. 49-54.
[4] *Íd.*, Anejo VIII, págs. 57-59. Notificada y archivada en autos el 11 de agosto de 2023.
[5] *Íd.*, Anejo XII, págs. 271-272; *Íd.*, Anejo XIII, págs. 274-277.
[6] *Íd.*, Anejo II, págs. 19-27.
[7] *Íd.*, Anejo III, págs. 28-40.
[8] *Íd.*, Anejo IV, págs. 41-42. Notificada y archivada en autos el 17 de octubre de 2024.

Inconforme, el ELA presentó ante nos un recurso de apelación el 16 de diciembre de 2024 y planteó los siguientes señalamientos de error:

**ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA, MEDIANDO ERROR MANIFIESTO, AL DESCARTAR LA NEGLIGENCIA COMETIDA POR LA PARTE APELADA ACORDE A SU PROPIO TESTIMONIO DE QUE SE ENCONTRABA BEBIENDO UNA CERVEZA EN CADA ESTABLECIMIENTO QUE VISITABA LA NOCHE DE LOS HECHOS; Y DESCARTAR SU ADMISIÓN EN TORNO A LA INGESTA DE UN TOTAL DE DOS CERVEZAS PREVIO A ACCIDENTARSE EN SU MOTORA; CONCLUYENDO EL TRIBUNAL QUE "ELLO DE POR SÍ NO ES SUFICIENTE" PARA ATRIBUIRLE NEGLIGENCIA, YA QUE NO HUBO PRUEBA DE ALCOHOL. SIN EMBARGO, SÍ HUBO PRUEBA DE CONDICIÓN IMPRUDENTE Y SIN LA DEBIDA PREVISIÓN.**

*EN LA ALTERNATIVA*, **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OTORGAR A LA PARTE APELADA UNA INDEMNIZACIÓN POR DAÑOS FÍSICOS Y ANGUSTIAS MENTALES COMO RESULTADO DE LA CICATRIZ SUFRIDA, A PESAR DE QUE NO SE DESFILÓ PRUEBA ALGUNA A ESOS EFECTOS Y QUE ESTA NO SE AJUSTA A LA NORMATIVA JURISPRUDENCIAL SOBRE VALORACIÓN DE DAÑOS.**

El 9 de enero de 2025, el Sr. Torres Wever radicó una *Moción de Desestimación y Alegato de la Parte Apelada*.

Después de la presentación y estipulación de la Transcripción de Prueba Oral (TPO) sobre el juicio en su fondo celebrado los días 5 y 6 de septiembre de 2024, el ELA presentó un *Alegato Suplementario* el 2 de abril de 2025.

Por su parte, el 7 de abril de 2025, el Sr. Torres Wever radicó un *Escrito en Cumplimiento de Orden y en Oposición al Alegato Suplementario del ELA*.

Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Como normal general, en los pleitos civiles, el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse prueba por alguna de las partes. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 913 (2011); *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 385 (2001); Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A). El peso de la prueba ha sido definido como la obligación de convencer al juzgador o a la juzgadora sobre la forma particular en la cual ocurrieron los hechos alegados. *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, pág. 913.

Por otra parte, atañe al juzgador la tarea de evaluar la suficiencia de la prueba, conforme al estándar de preponderancia de la prueba. *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, pág. 913; Regla 110 (F) de Evidencia, *supra*, R. 110 (F). Este estándar consiste en "establecer como hechos probados aquellos que con mayores probabilidades ocurrieron". *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980). **Nótese que la preponderancia de la prueba "no se refiere naturalmente al número de testigos ni a la cantidad de documentos. Denota la fuerza de convicción o de persuasión de la evidencia en el ánimo del juzgador"**. *Carrión v, Tesorero de P.R.*, 79 DPR 371, 382 (1956) (Énfasis suplido).

Además, al momento de evaluar la evidencia presentada ante sí y para establecer qué hechos quedaron debidamente probados, el foro primario deberá regirse por los principios que establece la Regla 110 de Evidencia, *supra*. En lo pertinente, la Regla 110 (C) de Evidencia, *supra*, R. 110 (C), dispone que, "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza". Cónsono con ello, "[l]a evidencia directa de una persona testigo que merezca entero

crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110 (D) de Evidencia, *supra,* R. 110 (D). **De ser creída por el juzgador de los hechos, la declaración directa de un solo testigo será prueba suficiente de cualquier hecho.** *Trinidad v. Chade,* 153 DPR 280, 291 (2001). En *Rodríguez v. Ponce Cement Corp.,* 98 DPR 201, 207 (1969), el Tribunal Supremo de Puerto Rico expresó, en lo pertinente que:

> **[P]or regla general, la ley no exige aquel grado de prueba que, excluyendo la posibilidad de error, produzca absoluta certeza**; porque tal prueba-- asegura la propia ley--es rara vez posible. Sólo se exige la certeza moral, o un grado de prueba que produzca convicción en un ánimo no prevenido. **No se tiene que probar el caso con exactitud matemática mediante evidencia directa, ni de modo concluyente, ni que produzca un grado tan per[f]ecto de convicción que no admita la posibilidad de la prueba en contrario.** El litigante puede probar su caso con evidencia indirecta, que es de dos clases, inferencias y presunciones. Es inferencia, la deducción que de los hechos probados, o acreditados completamente, hace en su discernimiento el juzgador. A veces se denomina presunción hominis. Representa ese discernimiento una actividad humana valorativa de comparación o confrontación, un proceso interno que constituye, a juicio del profesor Serra Domínguez, algo inabordable; el movimiento de la razón yacente en el hombre.

(Énfasis suplido).

En otras palabras, para probar un hecho no se requerirá un grado de certeza absoluto, sino que "[p]revalece[rá] la parte que llevó al ánimo del juzgador la mayor probabilidad de cómo ocurrieron los hechos o cuales son los hechos". E. L. Chiesa, *Tratado de Derecho Probatorio*, San Juan, Publicaciones JTS, T. II, pág. 1233.

**B.**

Es harto conocido que quien por culpa o negligencia le causa daño a otra, dicha persona viene obligada a repararlo. Artículo 1536 del *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 10801 (en adelante, Código Civil de 2020).

La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión,

que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.,* 210 DPR 465, 484 (2022) (Énfasis en el original eliminado); *Pérez Hernández v. Lares Medical Center, Inc.,* 207 DPR 965, 976-977 (2021). Específicamente, la negligencia por omisión surge cuando no se anticipa ni evita la ocurrencia de daños que racionalmente pudieron preverse. *Cruz Flores v. Hospital Ryder Memorial, Inc., supra,* pág. 484; *López v. Porrata Doria,* 169 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.,* 142 DPR 464 (1997). Para determinar si una omisión, en efecto, genera responsabilidad se considerarán dos (2) requisitos; estos son, (1) la existencia o inexistencia de un deber jurídico de actuar por parte del supuesto causante del daño, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Toro Aponte v. E.L.A., supra; Gladys Arroyo López y Otros v. E.L.A. et al.,* 126 DPR 682, 686 (1990).

En cuanto al daño, este se ha definido como " 'todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra' ". *López v. Porrata Doria, supra,* pág. 151 (*citando a* J. Puig Brutau, *Fundamentos de Derecho Civil,* Barcelona, Ed. Bosch, 1983, T. 2, Vol. 3, pág. 92). De no existir daño o perjuicio, no existirá una obligación de indemnizar. *López v. Porrata Doria, supra,* pág. 151 (*citando a Puig Brutau, op. cit.,* pág. 91). Por ello, es esencial que se demuestre la realidad de un daño y su cuantía. *López v. Porrata Doria, supra,* pág. 151 (*citando a Puig Brutau, op. cit.,* pág. 91).

Los daños se dividen en patrimoniales y no patrimoniales. *Sagardía De Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 505 (2009). Los primeros consisten en el menoscabo monetario sobre el patrimonio del perjudicado. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra,* págs. 505-506. Por su parte, los daños no patrimoniales " 'son en principio aquellos cuya valoración en dinero no tiene la base

equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria' ". *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág. 506 (*citando a* J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. III, pág. 457).

Bajo los daños no patrimoniales se encuentran los daños morales. Sin embargo, se ha distinguido entre los daños morales puros, los cuales no producen repercusiones de carácter patrimonial; y los daños morales impropios o patrimoniales indirectos que transcienden valores del patrimonio. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág. 506. De forma general, los daños morales son "infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado", así como todo dolor físico o moral. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág. 506; *Rivera v. S.L.G. Díaz*, 165 DPR 408, 428 (2005). Dichos daños morales son amplios y abarcan el dolor físico o corporal, las angustias mentales, hasta los daños o las lesiones corporales. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, págs. 506-507. En esa misma línea, un "acto torticero puede producir una lesión o daño corporal, el cual puede consistir desde golpes leves hasta un daño grave que produzca la muerte. Este tipo de daño corporal es resarcible y ha sido reconocido como independiente dentro del daño moral". *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág. 507.

Una de las manifestaciones de la lesión corporal puede ser tanto el dolor físico como psíquico de la persona. El dolor físico es definido como " 'manifestación a nivel local o general de la lesión, como consecuencia de los receptores nerviosos especializados en las distintas captaciones de estímulo' ". *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág. 507 (*citando a* B. Pérez Pineda y M. García Blázquez, *Manual de valoración y baremación del daño corporal*, 4ta

ed., Granada, Ed. Comares, 1995, pág. 36.). Es una sensación afectiva que se manifiesta de diversas formas incluyendo de forma perceptible, y por ello, el dolor físico es más fácil de constatar al estar relacionado con la lesión corporal que un dolor psíquico o las angustias mentales. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, págs. 507-508.

Ahora bien, además de la existencia de un daño real y un acto culposo o negligente, es esencial la existencia de un nexo causal para apoyar una reclamación en concepto de daños y perjuicios. La doctrina de causalidad dicta que " 'no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general' ". *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010) (*citando a Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974)). Este elemento es imprescindible en una causa de acción de daños y perjuicios, pues vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas, supra*, págs. 844-845. Además, el nexo causal está íntimamente ligado con la previsibilidad. *Nieves Díaz v. González Massas, supra*, pág. 844. El deber de cuidado incluye la obligación de anticipar y el de evitar la ocurrencia de los daños, cuya probabilidad es razonablemente previsible. *Administrador v. ANR*, 163 DPR 48, 60 (2004). Sin embargo, el deber de prever no se extiende a todo peligro imaginable que conceblemente pueda amenazar la seguridad, sino que es aquel que llevaría a una persona prudente a anticiparlo. *S.L.G. Colón Rivas v. E.L.A.*, 196 DPR 855, 865 (2016); *Hernández v. Gobierno de la Capital*, 81 DPR 1031, 1038 (1960). Asimismo, salvo los casos expresamente mencionados en ley o por alguna obligación, "nadie responde[rá] de aquellos sucesos que no hubieran podido preverse, o que, previstos, fueran inevitables". Artículo 1166 del Código Civil de 2020, *supra*, sec. 9318.

Ahora bien, en cuanto a la doctrina de asunción de riesgo, el concepto de "riesgo" se refiere a una relación libremente contraída entre el demandante y el demandado, por lo que se limita la responsabilidad de este último hacia el primero. *Urbino v. San Juan Racing Assoc., Inc.*, 141 DPR 210, 218 (1996). Esta norma tiene dos (2) acepciones; a saber, la primera, en la que existe un deber limitado de cuidado por el demandado, y la secundaria, que propiamente se configura como una manifestación de negligencia comparada. *Soto v. Tropigas de P.R.*, 117 DPR 863, 866 (1986).

En esa misma línea, del Artículo 1802 del derogado *Código Civil de Puerto Rico" Edición de 1930*, 31 LPRA ant. sec. 5141 (Código Civil de 1930), se desprende la negligencia comparada, la cual no exime de responsabilidad, pero reduce la responsabilidad de la parte demandada. *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 178 (2008); *Urbino v. San Juan Racing Assoc., Inc.*, *supra*, pág. 218. Por medio del Artículo 1545 del Código Civil de 2020, *supra*, sec. 10810, ahora se le conoce a dicha figura como imprudencia concurrente. Al igual que con la negligencia comparada, "la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización en proporción al grado de tal imprudencia". Artículo 1545 del Código Civil de 2020, *supra*, sec. 10810.

### C.

Es harto conocido que le corresponde al tribunal juzgador la valorización justa y necesaria para compensar daños y perjuicios sufridos, a tenor con su sano juicio, experiencia y discreción. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 509; *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 623 (2002). Asimismo, el foro primario debe guiarse por la razonabilidad al momento de estimar y valorar los daños. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 509. Sin embargo, esta estimación y valorización de

daños " 'es una gestión o tarea difícil y angustiosa, ello debido al cierto grado de especulación en la determinación de éstos y por incluir, a su vez, elementos subjetivos tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos' ". *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 509 (*citando a S.L.G. Rodríguez v. Nationwide, supra*, pág. 622; *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 769 (2023); *Rodríguez Cancel v. A.E.E.*, 116 DPR 443, 451 (1985). Se trata de "una tarea sumamente difícil, ardua y angustiosa, ya que no existen fórmulas científicas que provean un resultado exacto para indicar cómo se justiprecia el dolor y el sufrimiento causado". *Mena Pamias v. Jiménez Meléndez, supra*, pág. 769; *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Herrera, Rivera v. S.L.G. Ramírez-Vincens*, 179 DPR 774, 784 (2010). Incluso se complica más en los casos de daños morales, pues la determinación de un daño moral conlleva un gran esfuerzo para tratar de otorgar un valor monetario a intereses personales que no forman parte del andamio patrimonial. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 509.

Como parte del proceso de valorización de daños, los foros primarios deberán examinar la prueba desfilada y:

> [L]as indemnizaciones concedidas en casos anteriores [, ya que éstas] constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. Ello es así[,] aun cuando reconocemos que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. En todo caso, estas compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente.
>
> *Mena Pamias v. Jiménez Meléndez, supra*, pág. 770 (Énfasis suplido en el original eliminado) (*citando a Santiago Montañez v. Fresenius Medical, supra*, pág. 491)

Adviértase que nuestro máximo foro expresó que, si bien es cierto que no existen dos casos idénticos y que cada caso es

distinguible por sus circunstancias particulares, " 'ciertamente resulta de utilidad examinar las cuantías concedidas por este Tribunal en casos similares anteriores, sin que ello implique que estos se puedan considerar como precedentes obligatorios' ". *Mena Pamias v. Jiménez Meléndez, supra,* pág. 771 (Énfasis suplido en el original eliminado) (*citando a Soc. de Gananciales v. F.W. Woolworth & Co.,* 143 DPR 76, 81-82 (1997) (*per curiam*)). Además de evaluar casos comparables para utilizarlos como punto de partida como parte del proceso de determinar las cuantías a concederse por los daños, los tribunales deberán tomar en consideración las circunstancias particulares de cada caso. *Mena Pamias v. Jiménez Meléndez, supra,* págs. 769-770; *Herrera, Rivera v. S.L.G. Ramírez-Vincens, supra,* págs. 786-787.

Por todo lo anterior, los tribunales apelativos no deben intervenir con la estimación de los daños que los foros primarios realizan, salvo error manifiesto, pasión, prejuicio, parcialidad o abuso de discreción, o cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Mena Pamias v. Jiménez Meléndez, supra,* pág. 774; *Pueblo v. Hernández Doble,* 210 DPR 850, 864-865 (2022); *Cruz Flores v. Hospital Ryder Memorial, Inc., supra,* pág. 495; *Santiago Montañez v. Fresenius Medical, supra,* pág. 490.

### D.

Según el Artículo 397 del *"Código Político de Puerto Rico" de 1902* (Código Político), 3 LPRA sec. 419, se consideran como carreteras de Puerto Rico:

> Todos aquellos caminos o vías públicas que hayan sido o puedan ser construidos y estén entretenidos en la actualidad o en lo futuro, con fondos estaduales, o que estén incluidos en el plan general de los caminos que han de construirse y conservarse con fondos estaduales que pueda más adelante ser aprobado y decretado por la Asamblea Legislativa de Puerto Rico.

Véase además, *Rivera Jiménez v. Garrido & Co., Inc.*, 134 DPR 840, 851 (1993).

El Secretario de DTOP tiene un deber de mantener las carreteras del Gobierno de Puerto Rico a su cargo en buen estado de conservación. Artículo 403 del Código Político, *supra*, sec. 421; *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851. Por ende, el ELA será responsable civilmente de los daños y perjuicios por desperfectos, falta de reparación o protección suficiente para la persona que viaje en cualquier vía de comunicación perteneciente al ELA y a cargo del DTOP. Artículo 404 del Código Político, *supra*, sec. 422; *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Resto v. P.R. Telephone Co.*, 97 DPR 313, 319 (1969).

No obstante lo anterior, el ELA no es un garantizador absoluto de seguridad de los viajeros que utilizan las carreteras públicas. *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Rivera v. Pueblo*, 76 DPR 404, 408 (1954). El Estado no responde donde se pruebe que dichos desperfectos fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Artículo 404 del Código Político, *supra*, sec. 422. De igual modo, es importante que se establezca un nexo causal entre los daños sufridos y las condiciones de la carretera, por lo que solamente habrá una obligación de indemnizar si los daños constituyen una consecuencia del hecho. *Rivera Jiménez v. Garrido & Co., Inc., supra*, págs. 851-852. Además, nuestro máximo foro ha resuelto que la diferencia primordial entre el derogado Artículo 1802 del Código Civil de 1930, *supra*, ant. sec. 5141 - ahora Artículo 1545 del Código Civil de 2020, *supra*, sec. 10810, y el Artículo 404 del Código Político, *supra*, sec. 422, es que bajo el último "no es necesario probar la culpa o negligencia del Estado, sin embargo, el reclamante *siempre* debe probar la relación causal entre los desperfectos en la

vía pública y los daños". *Dones Jiménez v. Puerto Rico Highways Authority*, 130 DPR 116, 120 (1992) (Énfasis suplido en el original).

**III.**

En el presente caso nos toca resolver si el foro primario incidió al descartar la supuesta negligencia cometida por el Sr. Torres Wever por este haber manifestado que bebió una cerveza en cada establecimiento que visitó la noche de los hechos, y al no tomar en cuenta su admisión en torno a la ingesta de un total de dos cervezas previo al incidente. En la alternativa, debemos determinar si el TPI incurrió en error al otorgarle al Sr. Torres Wever una indemnización por daños físicos y angustias mentales como resultado de la cicatriz sufrida, a pesar de no haberse desfilado prueba a esos efectos y sin que se ajustara a la normativa jurisprudencial sobre valorización de daños.

A juicio del foro primario, la omisión del ELA fue la causa próxima de los daños sufridos por el Sr. Torres Wever. Fundamentó su dictamen en que, conforme a la prueba aquilatada, el ELA, a través de sus agentes y/o empleados, incurrió en negligencia por omisión al no reparar un hoyo profundo en una zona de alto tráfico vehicular y cuya jurisdicción le correspondía al ELA. Determinó que se demostró que existía un hoyo considerable en dicha vía, no había advertencia sobre el mismo, y que el hueco estaba lleno de agua al momento del accidente creando así una condición peligrosa para los conductores, en especial durante horas de la noche. Además, indicó que la carretera estaba cerca de la Zona Portuaria, por lo que el tránsito frecuente de camiones era previsible, y que las imágenes y el vídeo demostraron que el deterioro ocurrió durante un periodo prolongado de tiempo.

El foro *a quo* también razonó que el mero hecho de que él admitió haber consumido dos cervezas no era suficiente para atribuirle negligencia o responsabilidad. Específicamente, sostuvo

que el expediente carecía de prueba que demostrara que el Sr. Torres Wever estuvo ilegalmente intoxicado, que su capacidad para conducir se vio afectada, que condujo de forma imprudente o sin la debida precaución, o que se le hubiera realizado prueba de alcohol antes o durante la conducción de la motora. Además, al TPI le mereció entera credibilidad el testimonio del Sr. Torres Wever cuando afirmó que había consumido dos cervezas y que ello no afectó su capacidad para conducir la motora. En esa misma línea, el foro *a quo* resolvió que la doctrina de asunción de riesgo no era aplicable al caso porque el Sr. Torres Wever no asumió voluntariamente el riesgo de encontrarse con un hoyo oculto en la carretera, una condición que no podía prever. Por lo anterior, concluyó que el consumo de alcohol no fue un factor contribuyente del accidente ni incidió de forma alguna en la responsabilidad del ELA por los daños que sufrió el Sr. Torres Wever. En su consecuencia, dictaminó que la causa próxima del accidente fue la condición de peligrosidad de la carretera, producto de la negligencia del ELA con su deber de proveerle mantenimiento, conforme al Artículo 404 del Código Político, *supra.*

Por último, el foro primario llevó a cabo un ejercicio de valorización sobre los daños sufridos por el Sr. Torres Wever, y determinó que, a pesar de que había valorado los daños totales en $82,030.90, otorgó la cantidad total de $75,000.00 conforme a los límites establecidos por el Artículo 2(a) de la Ley Núm. 104-1955, *supra,* sec. 3077, sobre este tipo de reclamaciones contra el ELA.

Inconforme, el ELA arguyó que procedía imputarle al Sr. Torres negligencia comparada meramente por haber admitido que ingirió alcohol previo a accidentarse. También sostuvo que, como el Sr. Torres Wever decidió adelantarse a los demás del grupo y como al accidentarse tuvo que mirar hacia atrás para localizar a su padre, ello implicaba que condujo a una velocidad mayor. El ELA expuso

que supuestamente por no haber ido a una velocidad adecuada, el Sr. Torres Wever no contó con margen de maniobra para esquivar oportunamente el hoyo, y que la razón provista por el Sr. Torres Wever de no haber visto el hueco por el agua que contenía, era improbable, porque el foco de la motora pudo haberle advertido y que él pudo haber utilizado una ruta más segura. Por último, el ELA indicó que los testimonios provistos durante el juicio carecían de elementos que permitieran establecer angustias mentales causadas por la cicatriz, y que la cuantía de $25,000 fue excesiva e irrazonable.

Por su parte, el Sr. Torres Wever sostuvo que el ELA no presentó prueba pericial toxicológica sobre los efectos del consumo de dos cervezas en varias horas, o para establecer un nexo causal entre dicho consumo y el accidente. Adujo que, en cambio, el foro primario tuvo ante sí evidencia sustancial y creíble incluyendo fotografías, un vídeo, y testimonio pericial que establecieron que la causa próxima y eficiente del accidente fue la negligencia del ELA al mantener una condición peligrosa en una vía pública principal, sin iluminación adecuada ni advertencias de clase alguna. El Sr. Torres Wever también expuso que el ELA le había atribuido negligencia comparada por haber consumido las cervezas y que ello implicaba negligencia de forma automática al violar el límite de 0.02% de alcohol en la sangre para conductores de motocicletas. Sin embargo, indicó que, en *Sáez v. Municipio de Ponce*, 84 DPR 535, 540 (1962), nuestro más alto foro había reiterado que en una acción de daños, la violación de la ley o un reglamento por sí solo no constituía fundamento para establecer responsabilidad en ausencia de una demostración clara de causalidad entre el acto alegado y el daño sufrido. Por último, expuso que la valorización de los daños realizada por el foro primario estaba justificada y respaldada por

jurisprudencia, y que la cicatriz de 14cm fue demostrada por las fotografías y los testimonios del Sr. Torres Wever y del perito.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incidió en los señalamientos de error planteados por el ELA.

Según pormenorizamos anteriormente, es harto conocido que quien por culpa o negligencia le causa daño a otra, dicha persona viene obligada a repararlo. Artículo 1536 del Código Civil de 2020, *supra*, sec. 10801. La negligencia por omisión surge cuando no se anticipa ni evita la ocurrencia de daños que racionalmente pudieron preverse. *Cruz Flores v. Hospital Ryder Memorial, Inc.*, *supra*, pág. 484; *López v. Porrata Doria, supra*, pág. 150; *Toro Aponte v. E.L.A.*, *supra.* Para determinar si una omisión, en efecto, genera responsabilidad se considerarán dos (2) requisitos; estos son, (1) la existencia o inexistencia de un deber jurídico de actuar por parte del supuesto causante del daño, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Toro Aponte v. E.L.A.*, *supra*; *Gladys Arroyo López y Otros v. E.L.A. et al.*, *supra*, pág. 688. Además, es necesario que exista un nexo causal para apoyar una reclamación en concepto de daños y perjuicios.

Asimismo, el deber de cuidado incluye la obligación de anticipar y el de evitar la ocurrencia de los daños, cuya probabilidad es razonablemente previsible. *Administrador v. ANR, supra*, pág. 60. Sin embargo, el deber de prever no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad, sino que es aquel que llevaría a una persona prudente a anticiparlo. *S.L.G. Colón Rivas v. E.L.A.*, *supra*, pág. 865; *Hernández v. Gobierno de la Capital, supra*, pág. 1038.

Por otro lado, el ELA será responsable civilmente de los daños y perjuicios por desperfectos, falta de reparación o protección suficiente para la persona que viaje en cualquier vía de

comunicación perteneciente al ELA y a cargo del DTOP. Artículo 404 del Código Político, *supra*, sec. 422; *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Resto v. P.R. Telephone Co., supra*, pág. 319. No obstante lo anterior, el ELA no es un garantizador absoluto de seguridad de los viajeros que utilizan las carreteras públicas. *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Rivera v. Pueblo, supra*, pág. 408. En lo pertinente, es importante que se establezca un nexo causal entre los daños sufridos y las condiciones de la carretera, por lo que solamente habrá una obligación de indemnizar si los daños constituyen una consecuencia del hecho. *Rivera Jiménez v. Garrido & Co., Inc., supra*, págs. 851-852.

En el caso de marras, se celebró un juicio en el cual se marcaron diferentes pruebas documentales y se presentaron los testimonios del papá del Sr. Torres Wever, de la representante de Motor Sports, Inc., del perito en fisiatría, y del propio Sr. Torres Wever. Durante la celebración del mismo, el Sr. Torres Wever testificó que el 16 de noviembre de 2022, aproximadamente a las 7pm, estaba llegando a Willy Pinchos en motora,[9] cuando a eso de las 7:30pm, más o menos, pidió pinchos para comer y una cerveza Medalla.[10] Como una hora después, salió del establecimiento y fue a otro negocio en Guaynabo.[11] En ese lugar le acompañaron su papá y dos amigos,[12] y allí ingirió una cerveza de la misma marca.[13] Posteriormente, fueron a la Estrella del Norte en Guaynabo, pero estaba cerrado.[14]

Decidieron ir al Handlebar, y cogiendo la salida de la Avenida Kennedy, el Sr. Torres Wever indicó que se cayó en un boquete.[15] Sostuvo que se le abrió una herida en el brazo, y después de caer

---

[9] TPO del 5 de septiembre de 2024, pág. 15, L 4-10.
[10] *Íd.*, L 19-27.
[11] *Íd.*, L 28-32; *Íd.*, pág. 16, L 1-6.
[12] *Íd.*, pág. 16, L 7-8.
[13] *Íd.*, pág. 44, L 1-5.
[14] *Íd.*, pág. 16, L 11-15.
[15] *Íd.*, pág. L 16-31.

sintió golpes en todo su lado izquierdo y en la cara.[16] Según su testimonio, el hueco era bastante grande, pero estaba lleno de agua por lo que no pudo verlo. Expuso que en el área donde estaba localizado el boquete no había iluminación, y carecía de conos y cintas.[17] Como prueba, el Sr. Torres Wever presentó dos imágenes tomadas por él; a saber, una del hueco en cuestión tirada la misma noche del incidente; y otra del mismo boquete tomada al día siguiente día.[18] Sobre la primera imagen, el Sr. Torres Wever expresó que el hoyo estaba lleno de agua,[19] y sobre la segunda foto, sostuvo que se cayó en el hueco redondo de la derecha.[20] Además, tomó un vídeo del lugar del hoyo.[21]

A preguntas del ELA, el Sr. Torres Wever sostuvo que ingirió la segunda cerveza a eso de las 8:30pm con los pinchos, y no le provocó ningún efecto en la forma que condujo la motora.[22] Por su parte, y según su recurso de apelación, el ELA procedió a realizar un análisis sobre los porcentajes de alcohol que se encuentran dentro de los límites de la ley. Arguyó que tomando conocimiento de la Ley Núm. 22-2000, *supra*, y las cervezas ingeridas por el Sr. Torres Wever, el foro primario incidió al adjudicarle credibilidad al Sr. Torres Wever en cuanto a que el consumo de alcohol no afectó su capacidad para conducir la motora. El ELA también sostuvo en su *Alegato Suplementario* que supuestamente por no haber ido a una velocidad adecuada, el Sr. Torres Wever no contó con margen de maniobra para esquivar oportunamente el hoyo, y que pudo haber utilizado una ruta más segura.

---

[16] *Íd.*, pág. 17, L 1-8.
[17] *Íd.*, L 15-29.
[18] *Íd.*, pág. 18, L 5-30; véase también, Determinación de Hecho #16, Apéndice del recurso de apelación, Anejo I, pág. 5; *Íd.*, Anejo X, págs. 123-124.
[19] TPO del 5 de septiembre de 2024, pág. 20, L 29-32; *Íd.*, pág. 21, L 1.
[20] *Íd.*, pág. 21, L 2-7.
[21] *Íd.*, pág. 22, L 26-29; Apéndice del recurso de apelación, Anejo XIV, pág. 278.
[22] TPO del 5 de septiembre de 2024, pág. 53, L 11-15.

Sin embargo, del expediente no se desprende ni un ápice de prueba documental o testimonial que demuestre que las bebidas alcohólicas causaron los daños reclamados por el Sr. Torres Wever, o que él iba a exceso de velocidad. Por el contrario, las fotografías y el testimonio del Sr. Torres Wever demostraron que el lugar donde estaba el hoyo era oscuro, que el hueco estaba lleno de agua y tenía un tamaño grande, y que no había iluminación ni advertencias sobre la existencia de dicho hueco. Más importante aún, el ELA no presentó prueba que indicara que el Sr. Torres Wever tenía conocimiento del hueco lleno de agua o que el consumo de las dos cervezas afectó la forma en que estaba conduciendo su motora. En cambio, descansó en el porcentaje dispuesto por ley para argüir que, a base de los porcentajes de alcohol de ambas cervezas, dicho consumo afectó la capacidad del Sr. Torres Wever para conducir la motora. Sin embargo, meras alegaciones sin prueba toxicología, un análisis pericial de lo ocurrido u otro tipo de evidencia era insuficiente para determinar que el Sr. Torres Wever asumió el riesgo de sus daños y procedía imputarle imprudencia concurrente o negligencia comparada. Además, el foro primario, quien pudo observar al Sr. Torres Wever, le creyó cuando indicó que el consumo de las cervezas no afectó su capacidad para conducir la motora. Adviértase que, de ser creída por el juzgador de los hechos, la declaración directa de un solo testigo es prueba suficiente de cualquier hecho. *Trinidad v. Chade, supra*, pág. 291; Regla 110 (D) de Evidencia, *supra*, R. 110 (D).

Por lo tanto, el ELA tenía una obligación de mantener la carretera en cuestión en buen estado, y de haberla mantenido en dicho estado, se hubieran evitado los daños sufridos por el Sr. Torres Wever. En otras palabras, el ELA incurrió en negligencia por omisión, y el Sr. Torres Wever logró demostrar el nexo causal entre la falta de mantenimiento y sus daños. Por ende, el foro primario no

incidió al resolver que el ELA fue el único responsable por los daños del Sr. Torres Wever y no procedía imponerle a este último imprudencia concurrente o negligencia comparada.

Por otro lado, el ELA nos planteó, en la alternativa que, el TPI erró al otorgarle al Sr. Torres Wever una indemnización por la cicatriz sufrida, pues alegó que no se desfiló prueba alguna a esos efectos y que tampoco se ajustaba a la normativa jurisprudencial sobre valoración de daños. No le asiste razón.

Según el examen físico que realizó el perito en el presente caso, como consecuencia del accidente, el Sr. Torres Wever presentó una deformidad e hinchazón en el codo izquierdo al obtener una fractura abierta y en el hueso olécranon.[23] Luego del incidente, acudió a sala de emergencias para que le suturaran la herida del codo con 25 puntos.[24] Además, el perito también encontró una cicatriz de aproximadamente 14 cm de longitud en el codo dorsal y antebrazo proximal siendo la parte más ancha de 4cm de ancho, y unos bordes irregulares en dicha cicatriz como consecuencia directa de la herida abierta sufrida durante el incidente.[25]

De la *Sentencia* apelada se desprende que el foro primario utilizó dos casos como precedentes para determinar la cuantía de daños. Sin embargo, uno de estos fue utilizado específicamente para la valorización de los 14 cm de la cicatriz. En *Vargas Vargas v. Belthor Cáceres Corp.*, 90 DPR 37 (1964), como consecuencia de un choque, un menor sufrió unas laceraciones en el rostro con el cristal, las cuales le dejaron varias cicatrices; siendo estas de pulgada y cuarta a pulgada y media de largo en la ceja del ojo derecho, y otra en la parte izquierda de la frente de una pulgada.

---

[23] TPO de la vista celebrada el 6 de septiembre de 2024, pág. 32, L 6-24; Apéndice del recurso de apelación, Anejo X, pág. 125.

[24] TPO de la vista celebrada el 5 de septiembre de 2024, pág. 25, L 1-7; Apéndice del recurso de apelación, Anejo X, págs. 82-90.

[25] Apéndice del recurso de apelación, Anejo X, págs. 125-127, 129-130, 149.

Además, le tomaron 13 puntos en el hospital. A consecuencia de las lesiones, el Tribunal Supremo concedió $4,000.

En el presente caso, el foro primario ajustó dicha cantidad a $24,055. Como correctamente señaló el TPI, en el presente caso el Sr. Torres Wever requirió de 25 puntos, un número mayor de puntos en comparación con los 13 que le suturaron al menor en el caso del Tribunal Supremo. Por ende, el TPI aumentó la compensación a $25,000 por los daños físicos y las angustias mentales sufridas por el Sr. Torres Wever como consecuencia de la cicatriz de 14cm en su codo dorsal y antebrazo proximal.

Tal como puntualizamos anteriormente, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no procede nuestra intervención con la antedicha valorización de daños. Adviértase que los tribunales apelativos debemos de abstenernos de intervenir con las cantidades concedidas a menos que estas sean ridículamente bajas o exageradamente altas. *Mena Pamias v. Jiménez Meléndez*, *supra*, pág. 774; *Pueblo v. Hernández Doble*, *supra*, pág. 864; *Cruz Flores v. Hospital Ryder Memorial, Inc.*, *supra*, pág. 495; *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 490. En el caso ante nos, la cantidad que el foro primario le imputó al ELA por su negligencia no fue exageradamente alta, máxime cuando el resultado de su negligencia le causó al Sr. Torres Wever dolor, una herida abierta, 25 puntos de sutura, procesos quirúrgicos, tornillos, un brazo inmovilizado por aproximadamente dos (2) meses, terapias, dificultades en actividades diarias, y le imposibilitó trabajar por aproximadamente seis (6) meses. Por lo tanto, el TPI tampoco incidió al otorgar una indemnización de $25,000 por daños físicos y angustias mentales.

A la luz de lo antes expuesto, procede concederle deferencia al foro primario.

**IV.**

Por los fundamentos antes expresados, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones